ADVANCE-RUMELY THRESHER COMPANY, INCORPORATED, a Corporation, Appellant, v. PETER GEYER et al., Respondents.

(168 N. W. 731.)

Promissory note — transfer of — for value — consideration — due course — — separate corporations — same general purpose — organized for — agency — evidence.

1. Evidence examined and considered and *held* to show that the plaintiff did not take a certain $810 negotiable promissory note in due course of business for value without notice, it having taken and received the note from M. Rumely Company, who did not take said note in due course of business for value with-

out notice; it appearing from the testimony that Rumely Products Company and M. Rumely Company though separate corporations are organized for the same general purpose, to wit, the placing in the hands of the purchasers, the actual users thereof, certain farm machinery manufactured by M. Rumely Company, of which the Rumely Products Company, under all the testimony, appears to be a selling agency of the M. Rumely Company, and for all general purposes so far as the public is concerned are one and the same concern.

**Corporations — legal entity — general rule — two corporations — organized for same general purpose — community of interest — form of corporation — court will look through — substance of — individuals — right of action — redress — impaired or abridged — remedies and relief — granting — corporate character will not prevent.**

2. Corporations as a general rule will be considered a legal entity; but where two or more corporations having to some extent a similarity of name and which appear to be organized for the accomplishment of the same general purpose, and there is some appearance of a community of interest, such as where one of the corporations is the manufacturing corporation and the other corporation is organized to sell the manufactured products, turning in the proceeds of the sale to the manufacturing corporation, the court will look through the form of the corporation to its substance; and if it appear to be organized so that public convenience could be defeated, or the right of action or redress of individuals or others against the corporation could be prevented, its corporate character in and of itself will not prevent the exercise of proper remedies and granting proper relief where it appears clearly that the party applying for remedy and relief is clearly entitled thereto.

Opinion filed June 3, 1918. Petition for rehearing denied June 19, 1918.

Appeal from the District Court of Towner County, North Dakota, Honorable *C. W. Buttz,* Judge.

Judgment of the trial court modified, with costs.

*H. R. Turner* and *Barnett & Richardson,* for appellant.

Every holder of a negotiable instrument is deemed prima facie to be a holder in due course, unless the title of the holder is shown to be defective, as defined by the Code.

There is no claim here that the title of plaintiff is defective. Civ. Code, §§ 6940, 6944.

In the purchase of machinery where there is a written warranty and also provisions as to giving notice by the purchaser, upon which the warranty is based, his failure to give the notice as required by the contract is conclusive against his right to rely on the warranty. Fahey

v. Machinery Co. 3 N. D. 220; Case Co v. Ebbinghausen, 11 N. D. 466; Gould Co. v. Herold, 26 N. D. 287, 292; Nichols v. Knowles (Minn.) 18 N. W. 413; Murray v. Russell, 67 Pac. 421.

Notice to the agent from whom the machine was received is not notice to the company, as provided in the contract, and does not constitute a compliance with its provisions in such respect. Fahey v. Machinery Co. 3 N. D. 220, 224; Case Co. v. Ebbinghausen, 11 N. D. 466; Gould Co. v. Herold, 26 N. D. 287.

Where the agent sends out experts of his own selection, and without authority from the managing office so to do, such acts do not constitute a waiver of the stipulation as to giving notice. Mfg. Co. v. Lincoln, 4 N. D. 410.

*Flynn & Traynor,* for respondents.

A failure to give notice of defect in machinery bought or that it fails to work as required by the contract or order for the machinery does not constitute a waiver of the warranty contained in the contract. 50 L.R.A.(N.S.) 754.

"One who manufactures an article under an order for a particular purpose warrants by the sale that it is reasonably fit for that purpose." Comp. Laws 1913, § 5980.

Under the sale of such property with a warranty, the purchaser has a reasonable time after such purchase to ascertain whether or not the property complies with the warranty, and whether there are defects or breaches of the warranty, and what is a reasonable time is always a question for the jury, under the circumstances of each case. Comp. Laws 1913, §§ 5991–5993.

"It is a well-settled rule that an agent having power and authority to sell a machine under a contract which contains conditions for the benefit of the seller has authority to bind his principal by a waiver of such conditions." First Nat. Bank v. Dutcher (Iowa) 104 N. W. 197; McCormick v. Brower, 88 Iowa, 614, 55 N. W. 537; Osborne v. Bavker, 81 Iowa, 375, 47 N. W. 70; Peterson v. Machine Co. 97 Iowa, 148, 59 Am. St. Rep. 399, 66 N. W. 96; Harrison v. Russell & Co. (Idaho) 87 Pac. 784.

Appellant was not a holder of the note, for value, in due course and without notice. All defenses are still available.

GRACE, J. Appeal from the district court of Towner county, North Dakota, Honorable C. W. Buttz, Judge.

This is an action to recover the balance claimed to be due upon a promissory note by the plaintiff, which claims to be the holder in due course of such note, and also to foreclose a chattel mortgage given to secure such note. The complaint is in the ordinary form and alleges cause of action on the note, and contains proper allegations asking for the foreclosure of the chattel mortgage given to secure such note. Answer admits the execution of the note and mortgage referred to in the complaint, and further, by way of defense, alleges that the note was given for the purchase price of certain plows and equipment, and sets out a warranty by the seller upon which defendants allege they relied. Answer further sets forth that the plows were unfit for plowing, and that said warranty had never been fulfilled. The breach of warranty is fully pleaded in the ordinary way. Answer further sets out that the plaintiff and the seller and all the assignors and indorsees mentioned in the complaint are one and the same person or party, and that said Rumely organization under its various names is one and the same concern, and its reorganization under its various names is and has been accomplished in part at least for the purpose and with a view to defeat the legitimate defenses and claims of the defendants and others in like circumstances who have had dealings with the said organizations; and defendants specifically allege that said note was not in the usual course of business and for value duly sold and indorsed to M. Rumely Company before maturity, and that said M. Rumely Company had not become the owner and holder of said note before maturity thereof in the usual course of business for value, and without notice, and that the same is true with reference to the plaintiff's ownership, and that all of the obligations of the seller were, at all times, assumed by the plaintiff and their assignors; and defendant pleads a total failure of consideration of said note, and makes a tender of the property described in the complaint to the plaintiff, and also alleges that the plows and machinery so purchased were wholly worthless. Defendant further alleges with reference to the two payments made upon such note of $100 each, that they were made under a promise and agreement that the plaintiff would make good the warranty, and that this plaintiff has failed and refused to do, and defendant

demands payments for $200, with interest. Facts in the case are as follows:

Hansboro Hardware & Implement Company, located in Hansboro, North Dakota, are engaged in the hardware and implement business, and sold to the defendants the plows and plowing outfit, under consideration for which, on the 22d day of May, 1912, the defendants executed and delivered to the Rumely Products Company the note in question for $810, with interest at 8 per cent, and at the same time the defendants, Peter Geyer and Victor Geyer, executed to the Rumely Products Company the chattel mortgage upon the following property: One 10-bottom, 14-inch Oliver engine gang plow with stubble bottoms; five 14-inch breaker bottoms, ten 14-inch stubble shares, and five 14-inch breaker shares.

M. Rumley Company was an Indiana corporation organized in 1887 and was a manufacturing corporation. The Rumely Products Company was organized under the laws of New York in 1912 for the purpose of selling the manufactured products of the M. Rumely Company and others. The Advance Rumely Thresher Company was incorporated in September, 1915, and was a New York corporation, and took over or purchased $6,000,000 worth of the assets of the M. Rumely Company, which had become insolvent and went into the hands of a receiver, and the assets of the insolvent company were largely taken over or purchased by the Rumely Products Company from M. Rumely Company and its receiver, and with the property taken over or purchased was the note upon which suit is brought.

One payment of $100 was made on December 5, 1912, and another payment of $100 was made November 25, 1914. Each payment was made to a collector of the M. Rumely Company. Defendants claim that payments were made with the understanding had and promise made at the time the payments were made that the plows would be made good. Defendant testifies that he would not have made the $100 payments except for the promise to make the plows good, and the same condition is claimed as to the execution of the last chattel mortgage in March, 1915.

Among other findings of fact which the court made, there is the following:

"That during all of said negotiations the said Rumely Products

Company, M. Rumely Company, Advance-Rumely Thresher Company, and Finley P. Mount, as receiver of M. Rumely Company, was designated in all conversations by such terms as "the Rumely concern," and the said defendants were not, during said times, apprised of any change in the corporation or corporation name, but dealt, at all times, with the Rumely people or Rumely Company or Rumely concern with the understanding and belief that they were dealing with the same people at all times, and the said Rumely Products Company, M. Rumely Company, Finley P. Mount as receiver of the M. Rumely Company, and the Advance-Rumely Thresher Company, were each and all of them responsible for the impression given to the defendants that they were, at all times, the same concern and, at all times, each and all of said corporations and said receiver through their duly authorized agents assumed the position that it or he was the first original seller and entitled to all rights of the original seller and assuming all liabilities thereof; that the said last-mentioned chattel mortgage, dated March 30, 1915, was under date of August 14, 1916, assigned by Finley P. Mount, receiver of M. Rumely Company, to Advance Rumely Thresher Company, incorporated."

The foregoing finding of fact means that the Rumely Products Company, M. Rumely Company, and Advance-Rumely Thresher Company, so far as the rights of defendant are concerned, are to be considered the same concern. We are of the opinion that the finding of fact is correct, at least as to the Rumely Products Company and M. Rumely Company being, in effect, one and the same corporation; for if the Rumely Products Company was organized for the *purpose of purchasing and marketing the products of the M. Rumely Company,* even though it purchased and marketed the products of other concerns, the Rumely Products Company and the M. Rumely Company were, in effect, one concern. The M. Rumely Company manufactured certain articles of machinery or certain machinery. It is evident that the mere manufacture of the machinery did not terminate the object for which such corporation was organized. The machinery which it manufactured had to be marketed, and if the Rumely Products Company, a corporation, was organized for the specific purpose of marketing such machinery of the Rumely Company as it manufactured, the marketing process was equally as important a part of the business as the manu-

facture of the machinery, and the specific purpose of the Rumely Products Company being that of selling the articles manufactured by the M. Rumely Company, the conclusion is irresistible that they were really, in effect, one company though operated under separate names and possibly with entirely distinct stockholders. The appellant, in his brief, uses the following language: It concedes that the Rumely Products Company was organized *for the purpose of purchasing and marketing the products of the M. Rumely Company and other products.* "The undisputed facts in the case show that the Hansboro Hardware & Implement Company, Hansboro, North Dakota, were the local agents of the Rumely Products Company, a New York corporation organized January 25, 1912. *This corporation was organized for the purpose of purchasing and marketing the products of various corporations, among which was the M. Rumely Company,* an entirely distinct corporation, organized in Indiana in 1887. The uncontradicted testimony was that there was no connection whatever between the Rumely Products Company and the M. Rumely Company, and that all the officers and directors of the two corporations were separate and distinct."

The above language concedes that the Rumely Products Company was organized *for the purpose of purchasing and marketing the products of M. Rumely Company.* It is also further shown and must be conceded that there was an arrangement between the M. Rumely Company and the Rumely Products Company whereby the Rumely Products Company might turn into the M. Rumely Company the note or evidence of indebtedness which the Rumely Products Company received for the machinery of the M. Rumely Company which it was engaged in selling.

This is more clearly shown by the testimony of George C. Aldrich, witness on behalf of the plaintiffs. He testified by deposition.

The following question was asked him:

Q. Please state if you know the relations between the M. Rumely Company and Rumely Products Company.

A. M. Rumely Company was a manufacturing corporation organized under the laws of the state of Indiana, and in the fall of 1911 increased its capital stock, bought out some other companies engaged in the same business, and thereafter confined itself strictly to manu-

facture. Rumely Products Company was a corporation organized by some gentlemen wholly independent of M. Rumely Company for the purpose of purchasing and marketing the products made by M. Rumely Company, and products made by other manufacturing concerns, *and, in the selling arrangement between M. Rumely Company and Rumely Products Company, it was agreed that Rumely Products Company might pay to M. Rumely Company a part of its obligations arising to M. Rumely Company by reason of the purchase of its goods in good and collectable farmers' notes which Rumely Products Company might receive in the usual course of its business, and the note in suit was sold and delivered by Rumely Products Company pursuant to that arrangement.*

It would seem from the foregoing that the organization and business of the M. Rumely Company and Rumely Products Company served to accomplish the same purpose, to wit, the manufacture and sale of certain articles, conceded to be mostly farm machinery; this was the general purpose of the business as a whole. The organization of the Rumely Products Company was only an element to assist in carrying out the purposes of the M. Rumely Company and to facilitate and assist in the marketing of the articles manufactured by the M. Rumely Company, and was, in effect, a part of the same business. If the M. Rumely Company and Rumely Products Company were doing their respective parts for the purpose of accomplishing the purposes of the general business, they were, so far as the public is concerned, one and the same party. If it is a fact that the stockholders and directors of the M. Rumely Company and the Rumely Products Company are entirely separate and distinct, this fact alone, so far as the public is concerned, does not make them absolutely independent concerns if the results and whole compass of their work and the effect of the organizations is to accomplish one purpose.

It is not difficult to see, under such an arrangement as claimed by the plaintiff, that the public and the people who deal with concerns organized in the manner claimed for the M. Rumely Company and Rumely Products Company could have no recourse against them or either of them for breach of warranty of machinery purchased from such concern, or for any other cause of action, for the reason that M.

Rumely Company would claim that it sold machinery outright to the Rumely Products Company, therefore was under obligations to no one excepting the Rumely Products Company, while the Rumely Products Company, immediately upon taking good negotiable paper for the machinery, would immediately indorse it to the M. Rumely Company before maturity, and thus the M. Rumely Company would take shelter under the familiar rule of negotiable paper, that it took it in the ordinary course of business before maturity for value. Under such an arrangement, the public who deal with such concerns would be left helpless and would have no recourse for any cause of action against such concerns.

The time has passed, or at least is swiftly passing, when courts are confined, in their analysis, to the mere form and entity of the corporation. Courts will look upon the corporation as a legal entity until sufficient reason arises to look beyond the mere form and entity of the corporation. If the corporation is so organized that it can be used to defeat the rights of innocent parties, defeat public convenience, or cut off the right of redress, or of action against it or against other corporations of which it is, in effect, an agent, a court of equity will look through the form of the corporation and examine the substance of it, and if several corporations are organized for a common purpose, it will look through the forms of all such corporations to the substance thereof; and the fact that several corporations are organized to carry out a common purpose will not prevent redress to an injured party, though the corporation which causes the injury or loss claims to have no connection with the general purpose for which the principal corporation is organized. Its legal entity will not alone protect it.

Authorities which, to some extent, express a similar principle, are as follows: J. J. McCaskill Co. v. United States, 216 U. S. 504, 54 L. ed. 590, 30 Sup. Ct. Rep. 386; Re Rieger, 157 Fed. 609; United States v. Milwaukee Refrigerator Transit Co. 142 Fed. 247; First Nat. Bank v. F. C. Trebin Co. 59 Ohio St. 316, 52 N. E. 834; Coupon Corporation, § 664.

As we view this matter, the M. Rumely Company and Rumely Products Company, while conceding they may be organized separately, having separate stockholders and officers, they are, so far as the public is concerned and those dealing with them, in effect, one concern. That

the Rumely Products Company was no more than a selling agency of the M. Rumely Company, that the purpose of the two corporations was a common one, that is, to place in the hands of the actual purchasers for use certain machinery with the understanding and agreement that the Rumely Products Company could turn over the paper it took from the purchaser of the machinery to M. Rumely Company,—all of which simply facilitated the placing on the market of the machinery manufactured by the M. Rumely Company, which was the purpose of its organization.

Under such circumstances we must hold that the paper, the negotiable instrument in question, turned over by the Rumely Products Company to the M. Rumely Company, was not taken in due course, but that the turning over in such manner was, in effect, the same as if taken directly by the M. Rumely Company, and it is subject to all defenses as it would have been in the hands of the Rumely Products Company. It must be held, under these circumstances, the M. Rumely Company was not a purchaser in due course without notice and for value, of the paper in question, and having turned it over to the Advance-Rumely Thresher Company after maturity, the Advance-Rumely Thresher Company took it subject to all the defenses which might have been made against the paper in the hands of the M. Rumely Company. It is not necessary to go into an analysis of the corporation which is denominated the Advance-Rumely Thresher Company, as it is not material in this action. Whether the plow in question was manufactured by the M. Rumely Company is not material. The note given for the plows was turned in to the M. Rumely Company. It must be presumed that the Rumely Products Company received the machinery in question from the M. Rumely Company, otherwise it would not have turned in the note as payment therefor. At any rate, under the arrangement between M. Rumely Company and Rumely Products Company which we have before outlined, the M. Rumely Company could not become a purchaser in due course for value without notice, so as to be relieved from any cause of action arising or defenses to be made by reason of the sale of any machinery by the Rumely Products Company.

Referring to the warranty, the plaintiff claims that there is no breach of the warranty. It is claimed there was no showing made

that the plows were not made of good material, and no substantial proof adduced that the plows did not do as good work under the same conditions as any other plows of the same size and rated capacity, made for the same purpose. The plaintiff, in his brief, uses the following language: "There is not a word of testimony in the record, that other machinery of the same size and rated capacity, made for the same purpose under the same conditions, would or did work any better than the plows in question. Indeed, there was no attempt to offer any proof with respect to any other machinery of a similar kind whatsoever."

We do not believe such is the proper construction to be placed upon that portion of the warranty. That language really means, and we believe would be understood by the purchaser to mean, that the plows will actually do the work for which they were intended and constructed; and the statement in the warranty, that the plows would do as good work under the same condition as any other plows of the same size for the same purpose, is a warranty of the working quality of the plows in question, and holds out the meaning that the plows are properly constructed mechanically and thus will do the work. Otherwise, the warranty would be practically meaningless and of little effect, and it would be absurd to hold, under such a warranty, that a person who bought the plows in question would have to go about testing other and different kinds and makes of plows to determine their capacity to do good work and then make note of all those tests and conditions, then make a test of the plows in question, then compare the work of the plows in question with the work performed by the other and different plows which were tested. If a plow is made of good material, if it is properly constructed and built, if it is mechanically correct, it should do the work for which it was built and intended; and if it does not do the work for which it was constructed and intended, then, as a plow, it is of little value, and to the purchaser would be practically worthless. Presumably the reason the purchaser bought the plow and gave his note therefor was to get a plow that would do the work, and the testimony is quite conclusive that this plow would not do the work for which it was constructed. The plow in question was warranted to be made of good material and, with good care and proper use and management, to do as good work as other plows of like size and capacity made for the same purpose.

The defendants could not make the plows work, nor did the experts seem to remedy the trouble or do anything which would cause the plows to do the work for which they were constructed. If the testimony is to be believed, the plow was really worthless, and it was not necessary to make a comparison between the working qualities of this plow and other plows of different makes of the same size and rated capacity, to determine the failure of the plows in question to do good work in accordance with its capacity and size, and, as we before stated, the reasonable construction to be placed upon the language as a whole is that the plow, if made of good material and properly constructed, should do the work for which it is constructed; and we think the real meaning of the warranty is that the plow is warranted to do good work within its capacity and size.

There is no merit in the point that notice of the defects and breach of warranty was not served in proper time or upon the proper party. It is properly served, if such notice of defects or breach of warranty is served within a reasonable time upon the person who negotiated the sale of the property, concerning which the breach of warranty is alleged, or who made delivery of such property. Sections 5991 and 5992, Compiled Laws 1913, fully cover these questions. Section 5993 provides that any provisions in any written order or contract of sale or other contract, which is contrary to any of the provisions of this act, shall be void. Said act includes the sections we have quoted. Said act remains in full force and effect.

It is not shown that the Advance-Rumely Thresher Company received any part of the two $100 payments that were made upon the note in question. The payments having been made to the M. Rumely Company before the note in question was turned over to the Advance-Rumely Thresher Company, it must be assumed, in the absence of testimony to the contrary, that the M. Rumely Company retained the $200 so paid. If the defendants have any remedy by which to recover the said $200, it would not be against the Advance-Rumely Thresher Company but against the M. Rumely Company. We do not pass upon the question whether they have any such remedy against the M. Rumely Company.

We have examined all the assignments of error from 1 to 15 inclusive, and find no error therein.

The judgment of the trial court is modified, with costs, in that the judgment is to be reduced in the sum of $200, the amount of the payment on the note, and interest on the $200, if any, which was incorporated in the judgment of the trial court.

BIRDZELL, J. (concurring specially). I concur in the result reached in the foregoing opinion of my associate, Judge Grace, and in most of the reasons assigned therefor. I am of the opinion, however, that it was not shown that the Rumely Products Company and the M. Rumely Company were, to all intents and purposes as regards the transaction in question, the same corporation. I am further of the opinion that, under all the facts and circumstances disclosed in the record, there is ample foundation to support a finding that the M. Rumely Company had notice of the defense which was established by the defendants, and that it was consequently not entitled to the protection which is accorded to holders in due course. The M. Rumely Company could transfer, through the receiver, no better title or right than it had. 8 C. J. 472.

CHRISTIANSON, J. (dissenting). I am unable to agree with the conclusions reached by my associates in this case, for the following reasons: The M. Rumely Company was a manufacturing corporation. The Rumely Products Company was a corporation organized for the purpose of purchasing and selling agricultural implements. And while the latter company handled some of the goods manufactured by the M. Rumely Company, it also handled goods manufactured by other companies. The undisputed evidence is to the effect that the two corporations were entirely distinct and separate. That they were organized by different men. That the officers, directors, and stockholders were different. That not any of the stock in the Rumely Products Company was ever owned by the M. Rumely Company, and that not a single officer or director of the M. Rumely Company was either a stockholder in, or officer of, the Rumely Products Company. The evidence also shows that the M. Rumely Company was dissolved and its assets sold by receivers appointed by the district court of the United States for the district of Indiana, and that the plaintiff, Advance-Rumely Thresher Company, purchased a portion of the assets at such

receiver's sale. The sale was conducted in the receivership proceeding in the usual manner; under the supervision and with the approval of the Federal court. The undisputed evidence is to the effect that the Advance-Rumely Thresher Company was organized under the laws of New York, and that the organizers, directors, and stockholders were men who never had been either stockholders or officers in either the M. Rumely Company or the Rumely Products Company. In the face of this evidence, I am at a loss to understand how it can be held that these different companies were in fact one concern. The name "Rumely" was well known among men interested in agricultural, especially threshing, machinery; and it is easy to understand why it was deemed desirable to include this word as a part of the corporate name of the different corporations. And the mere use of the word "Rumely" in the names of these different companies, in my opinion, does not justify the conclusion that the companies were in fact one, especially when the uncontradicted evidence in the case is all to the contrary.

Nor is there anything in the record to warrant the conclusion, that the M. Rumely Company was not a holder in due course of the promissory note involved in this action. Under the Negotiable Instruments Act, "a holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Comp. Laws 1913, § 6937.

And, "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, *the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith.*" Comp. Laws 1913, § 6941.

This statute is plain and specific, and leaves little room for construction. It provides that, in order to charge a purchaser of com-

mercial paper with notice of defenses thereto, it must appear that he had actual knowledge of the specific infirmity or defect set up as a defense, or knowledge of such facts that the purchase of the negotiable instrument amounts to bad faith. See American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; McPherrin v. Tittle, 36 Okla. 510, 44 L.R.A.(N.S.) 395, 129 Pac. 721; 3 R. C. L. § 277, pp. 1071, 1072.

As already stated, the undisputed evidence in the instant case is to the effect that the M. Rumely Company and the Rumely Products Company were entirely distinct and separate corporations, owned and officered by different men. There is not a scintilla of evidence to the effect that the M. Rumely Company had any actual notice or knowledge of any defect or infirmity in, or of any existing defense to, the promissory note involved in this case. There is no contention that all of the machinery manufactured by the M. Rumely Company was defective or undesirable. On the contrary, it is a matter of common knowledge that a great deal of the farm machinery manufactured by this company was desirable and had been, and was then being, purchased and used generally throughout the state of North Dakota. And in this case, the evidence is to the effect that the note in controversy was executed and delivered in payment of certain Oliver plows, and there is not one word of testimony to indicate that there was any connection whatever between the M. Rumely Company and the Oliver Plow Company. But even though the M. Rumely Company had occasion to believe or was informed that the note purchased by it from the Rumely Products Company was received by the latter company in payment of Oliver plows sold by the Rumely Products Company, this would not of itself constitute notice to the M. Rumely Company of any defect or infirmity in the note, and that the makers thereof had any defense thereto. For it is well settled that mere knowledge of the consideration for which a negotiable instrument is given does not of itself impose upon the purchaser the duty to make inquiry with respect to the sufficiency, or charge him with notice of failure of the consideration. See Houston v. Keith, 100 Miss. 83, 56 So. 36; Bank of Sampson v. Hatcher, 151 N. C. 359, 134 Am. St. Rep. 989, 66 S. E. 308; Dollar Sav. & T. Co. v. Crawford, 69 W. Va. 109, 33 L.R.A.(N.S.) 587, 70 S. E. 1089; Hakes v. Thayer, 165 Mich. 476, 131 N. W. 174;

Park v. Zellars, 139 Ga. 585, 77 S. E. 922; Citizens Bank v. Greene, 12 Ga. App. 49, 76 S. E. 795; Stubbs v. Fourth Nat. Bank, 12 Ga. App. 539, 77 S. E. 893.

I am also of the opinion that §§ 5991–5993, Comp. Laws 1913, relating to the time and manner of giving notice of breach of warranty in personal property, have no application in this case, as the note involved was executed and transferred over a year before those sections became the law of this state.

In my opinion, the judgment should be reversed and judgment ordered for the plaintiff, or a new trial had.

BRUCE, Ch. J. I concur in the opinion of Mr. Justice CHRISTIANSON.

PER CURIAM. In the petition for rehearing filed herein, principal reliance seems to be placed upon the contention that the plaintiff is entitled to occupy the position of a holder in due course; and it is insisted that there is no evidence in the record to support a finding either that the M. Rumely Company and the Rumely Products Company are, in effect, the same corporation, or that the M. Rumely Company took the negotiable instrument burdened with defenses that might have existed as to the Rumely Products Company. While the opinions filed by the majority members of the court disclose that these questions have been fully considered, it is deemed proper to briefly state the record evidenced in support of the finding that the M. Rumely Company is not entitled to the favorable position contended for.

The agent who represented the M. Rumely Company, in attempting to collect the note in suit and who, in fact, collected a portion thereof, was shown to have made a definite promise on behalf of the M. Rumely Company that the plows would be made good. It was further shown that experts were sent to work on the plows in an effort to put them in working order, and also that on the 30th day of March, 1915, the defendants, in reliance upon the promise of the agent of the M. Rumely Company to put the plows in working order, executed a new chattel mortgage, running to Finley P. Mount, receiver for the M. Rumely Company, which covered their crop as well as the machinery which had been embraced in the original mortgage (the one in suit). If the

40 N. D.—3.

M. Rumely Company was at that time claiming to be the holder in due course of the paper, with the right to enforce the security that it had without regard to the warranty, it should have asserted its right then so that the defendants could have chosen as to whether or not they would stand upon the rights which they contend were theirs. The attitude of the M. Rumely Company in taking additional security under the circumstances is in the nature of an admission of their obligation to make the warranty good. If it was a holder in due course, it was a holder in due course before the efforts made to collect and before it undertook to make good on the warranty. A holder in due course of negotiable paper is not ordinarily concerned about collateral arrangements between the payee and the maker, and the fact that the M. Rumley Company concerned itself to the extent that it did in this case is, to our minds, strong evidence that it considered itself under obligation to the defendants. When this admission is considered in connection with the selling arrangement between the M. Rumely Company and the Rumely Products Company, according to which the M. Rumely Company was to receive payment in notes taken by the Rumely Products Company, and also in connection with the fact that the Rumely Products Company was a selling agent for the "Rumely Line," the "Advance Line," and the "Gaar-Scott Line," as shown on the note in suit, it is only reasonable to infer that the M. Rumely Company was apprised of the character of the selling contract that the Rumely Products Company customarily used.

The foregoing answers also the contention that the plaintiffs failed to comply with conditions precedent to the enforcement of the warranty, such as the giving of notice, etc. These conditions were for the benefit of the warrantor or its assignees, and could, of course, be waived. There was ample evidence that they were waived in this case.

The petition for rehearing is denied.

BRUCE, Ch. J., and CHRISTIANSON, J., adhere to their dissent.