[No. 18745. Department Two. December 5, 1924.]

S. F. PLATT, *Respondent*, v. BRADNER COMPANY, *Appellant*.[1]

CORPORATIONS (188) — AGENTS — POWERS — CONTRACTS AND INDEBTEDNESS — PLEDGING CREDIT — GUARANTY AND SURETYSHIP. Where an affiliated corporation represented in a letter to customers of a subsidiary corporation (having the same president and stock control) that it owned all the stock of the latter, and "hereby guarantee" the payment for all milk sold to it, and thereby induced producers of milk to sell their produce to it for a period of two years, the letter, though insufficient, under the statute of frauds, to create a liability, is material and relevant as an admission against interest; and in connection with the fact that the contracting company kept no books or records, and had the same stock control, is sufficient to warrant the courts in disregarding their separate entity and treating the two corporations as one, and liable for the milk sold.

Appeal from a judgment of the superior court for King county, Frater, J., entered February 16, 1924, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract, after trial on the merits. Affirmed.

[1]Reported in 230 Pac. 633.

*Grinstead, Laube & Laughlin* and *Harry A. Rhodes,*
for appellant.

*Elias A. Wright* and *Sam A. Wright,* for respondent.

Holcomb, J.—A motion, made and argued in the
briefs to dismiss the appeal on the ground that one of
the interested parties bound by the judgment was not
served with notice of appeal, is denied, since the record
has been supplemented to show that the ground of the
motion is unfounded.

The action is one by a dairy farmer, suing in his
own behalf and as assignee, for the purpose of collec-
tion, of sixteen other dairymen in the vicinity of Issa-
quah, Tolt, Redmond, and Snoqualmie, to recover on
seventeen causes of action aggregating the sum of $2,-
130.40. The action was brought against The Bradner
Company, a corporation, appellant, and the Canyon
Milk Products Company, a corporation, jointly, upon
the theory that they were both liable.

Appellant is a corporation, doing business in Seattle,
Washington, whose business consists of selling and
handling eggs and dairy products. It was incorporated
on June 28, 1916, by C. G. Bradner, Lucy F. Bradner,
C. F. Bradner, L. C. Bradner, and Esther Bradner. Its
capital stock consisted of $300,000, divided into three
thousand shares of the par value of $100 each. Later
there were some transfers of stock, so that a corpora-
tion called the Bradner Investment Company became
the owner of 1,400 shares, and Messrs. Bloomquist,
Cunningham, Cooper, Pease, and Rosenfeld became
the owners of stock aggregating 1,266 shares; and it
will be noted that the Bradner family still maintained
control of appellant company by the ownership of a
large majority of the stock.

From the organization and up to and including the
year 1923, L. C. Bradner continued to be president and

treasurer of appellant company, and C. F. Bradner secretary.

On January 31, 1919, the defendant Canyon Milk Products Company was organized with a capital stock of $50,000, divided into five hundred shares of the par value of $100 each, one hundred shares of which were denominated "preferred" and four hundred shares "common" stock, the incorporators of the company being L. C. Bradner, C. F. Bradner, F. S. Inches, J. L. Tuttle, and A. J. Rhodes. Of this stock, the entire $10,000 of preferred stock was originally subscribed by the Bradner Company by L. C. Bradner, president, but this stock was issued to L. C. Bradner personally, and paid for by him. Of the common stock, F. S. Inches subscribed for $10,000 worth, J. L. Tuttle $5,000 worth, L. C. Bradner $100 worth, A. J. Rhodes $100 worth, and Cleo Bradner, who is shown to be the wife of L. C. Bradner, $19,700 worth.

All of the stock is shown to have been paid for on the books of the company except the stock of Inches and Tuttle, who seem neither to have paid, nor to have been required to pay, anything. Cleo Bradner gave her proxy to L. C. Bradner to vote all shares of stock of the Canyon Milk Products Company standing in her name at all annual and special meetings of the stockholders of the company, and to do all things necessary and proper to carry the proxy into effect. Inches, Tuttle, L. C. Bradner, C. F. Bradner, and A. J. Rhodes were elected the first trustees of the corporation, and qualified as such on February 11, 1919. L. C. Bradner was made president of the Canyon Milk Products Company, J. L. Tuttle secretary, and F. S. Inches, treasurer. No minutes of any proceedings of the stockholders or trustees of the Canyon Milk Products Company were entered on the books of the company after a resolution dated "2-18-19," which authorized Inches

as treasurer to make deposits in the Union National
Bank of Seattle, and to draw and endorse checks upon
the account in that bank, and authorizing L. C. Brad-
ner, president, to do the same thing. From that time
on, minutes of that corporation seemed unnecessary.
Inches seemed to have had the management of the
business of buying milk products for the Canyon Milk
Products Company, at Issaquah and elsewhere in King
County. It seems that the milk producers in the vicin-
ity of the place of business of the Canyon Milk Prod-
ucts Company were reluctant to sell their products to
it, not being sure of receiving pay therefor. Accord-
ingly Inches procured from L. C. Bradner, as president
of appellant company, an instrument as follows:

3-29-19

Mr. Bert Vandermeer, Pres.
Grange Merc. Assn., Issaquah.
Dear Sir:

This is to certify that the Canyon Milk Products
Co., operating the condenser at Issaquah, is owned
and controlled by the Bradner Co., and we hereby
guarantee the payment for all milk sold to the Issa-
quah plant.

Yours very truly,
THE BRADNER COMPANY
By L. C. Bradner, Pres.

This writing was upon stationery bearing the head-
ing:

THE BRADNER COMPANY
Wholesale
BUTTER, EGGS AND CHEESE
Manufacturers
JERSEY CREAMERY BUTTER.

It was signed by the Bradner Company in typewrit-
ing, and by L. C. Bradner, president, in handwriting.
Some doubt was attempted to be cast upon the authen-
ticity of the signature of L. C. Bradner to the instru-
ment at the trial, but there can be no doubt, after
examining his signatures in the record, as well as the

testimony of expert witnesses, that the signature was that of L. C. Bradner. This writing was exhibited by Mr. Vandermeer to respondent, and his several assignors. It was likewise posted in the place of meeting of the members of the farmers Grange, where it remained for some time, and thereafter it was deposited with the president of the Issaquah Bank for safekeeping and for inspection by the various farmers with whom the Canyon Milk Products Company was dealing, or expected to deal. As soon as this instrument was signed and delivered to the president of the Grange, the milk producers lost their reluctance to sell to the Canyon Milk Products Company, and thereafter sold large quantities to it. At the time the Canyon Milk Products Company became insolvent and discontinued business, and Inches had disappeared from the community, these parties had sold and delivered something over $6,000 worth of farm products, which had been reduced by payments to the amount involved in this suit.

It appears from the account book of the Canyon Milk Products Company that appellant had advanced large sums of money to the Canyon Milk Products Company for the purpose of meeting pay-rolls and paying for products that company had bought, and otherwise keeping it going. Appellant company produced no record of its transactions with the Canyon Milk Products Company except the records of the Milk Products Company itself, appellant's president testifying that their books had not been kept for so long a time, and that the books of the Canyon Milk Products Company showed the reverse entries of the transactions with Canyon Milk Products Company, which would have been shown in their books.

The theory of respondent at the trial, and now is,

that the oral testimony produced at the trial, the books of the companies, and the written instrument set forth above, establish such connection between appellant and the Canyon Milk Products Company as to show that the Canyon Milk Products Company was nothing but a subsidiary company or an adjunct to that of appellant; that the Canyon Milk Products Company was so dominated and controlled by the principal and dominating stockholders of appellant, and was made use of for appellant's own purposes to such an extent as to render appellant itself liable.

The principal contention of appellant is as to the materiality and effect of the writing above set forth. It is vigorously contended that a mere inspection of the writing makes it apparent that it is not a sufficient writing, under the statute of frauds, to answer for the debt, default or miscarriage of another person; and that, in any event, it is not shown to have been authorized by the appellant company, and if its president executed and delivered it without such authority it is not binding upon appellant. It is also contended that there is no fraud or fraudulent intent shown on the part of appellant in its dealings with respondents, or holding out of the Canyon Milk Products Company as its agent or subsidiary.

We concede that the instrument set out above lacks authority by any corporate act of appellant to bind it as a contract in writing under the statute of frauds. Indeed respondent disclaims any such character in the instrument. It was not sued upon as a contract.

But under the circumstances here, we think that this instrument was certainly material and relevant as a declaration against interest which the president of appellant could make either orally or in writing, and thus bind the company when others acted upon it to their

prejudice. There can be no doubt in this case that others acted upon this instrument to their prejudice.

It is well-settled law that the president of such a corporation may bind it by his declarations and admissions, where it involves matters within the scope of his duties, and are pertinent to the issues involved. 2 Thompson on Corporations, § 1629; Same, Cumulative Supplement 1922, § 1629.

From September 10, 1917, to December 27, 1919, or over two years, there never was a meeting of the stockholders, L. C. Bradner continued in office as president and treasurer, thus manifestly being the guiding spirit and manager of appellant. The writing in question was given March 29, 1919.

It is also well settled law that, while, in general, a corporation is a separate legal entity, nevertheless when one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice require; and where stock ownership is resorted to not for the purpose of participating in the affairs of the corporation in the customary and usual manner, but for the purpose of controlling the subsidiary company so that it may be used as a mere agency or instrumentality of the owning company, the court will not permit itself to be blinded by mere corporate form, but will, in a proper case, disregard corporate entity, and treat the two corporations as one.

1 Fletcher Cyc. of Corporations, p. 63, § 45; Same, 1921, Supplement Vol. 10, p. 11, § 45; *Spokane Merchants' Association v. Clere Clothing Co.,* 84 Wash. 616, 147 Pac. 414; *Clere Clothing Co. v. Union Trust & Savings Bank,* 224 Fed. 363; *Advance-Rumely Thresher Co. v. Geyer,* 40 N. D. 18, 168 N. W. 731. See

also *In re Eilers Music House,* 270 Fed. 915, Id., 274 Fed. 330; *Luckenbach S. S. Co. v. W. R. Grace & Co.,* 267 Fed. 676; *Hunter v. Baker Motor Vehicle Co.,* 225 Fed. 1006.

The above cases cite many other cases sustaining the principle here announced, but they are too numerous to extend this opinion by citing them all. We have our own cases of *Mitchell v. Lea Lumber Co.,* 43 Wash. 195, 86 Pac. 405, 10 Ann. Cas. 231, 9 L. R. A. (N. S.) 900. *Roberts v. Hilton Land Co.,* 45 Wash. 464, 88 Pac. 946. These cases follow the same principle as was followed in the *Clere Clothing Co.* case, *supra.*

The cases cited by appellant from this court, *Crown Paving & Construction Co. v. Walla Walla County,* 122 Wash. 144, 210 Pac. 357; *Parr v. Pacific Storage Warehouse,* 124 Wash. 26, 213 Pac. 677; and *Mansfield State Bank v. Leslie Hardware Co.,* 126 Wash. 562, 219 Pac. 15, 222 Pac. 901, are not in point, these cases being cases where the writings executed by an unauthorized officer were sued upon as such; and in the last cited case it was mere accommodation paper, or paper executed for an unlawful purpose, and as was pointed out, no one had been injured by reliance thereon.

We feel bound to conclude that, in this case, respondent made a case to go to the jury upon the writing in evidence as a declaration or admission against interest, and the other evidence introduced, making appellant liable for the debts of the Canyon Milk Products Company to respondent and his assignors.

That being the case, the instructions given by the trial court and complained of by appellant were correct.

The judgment is affirmed.

MAIN, C. J., TOLMAN, MACKINTOSH, and BRIDGES, JJ., concur.