Williams, J.,
 

 dissenting. To avoid .fallacious reasoning, it must be kept in mind that the parent corporation desired for its own use in its business a department store building, which it was already occupying, and employed the wholly owned and controlled subsidiary to get the lease thereon. The subsidiary had no use for the building and did not profit by the getting of the leasehold. All the negotiations and the transaction itself were managed and controlled from beginning to end by the parent. True the subsidiary
 
 *528
 
 had been used before in a similar way, but that circumstance cannot alter the case. In such a situation the subsidiary serves, not its own purposes, but those of the parent.
 

 If these facts in evidence are ignored, the result will be a conclusion based on erroneous premises. Of course a corporation is organized to afford limited liability, and its stockholders, natural or artificial, are not, merely as such, liable for its debts. But to regard this principle as controlling the instant case is to disregard the main issue.
 

 What is the law applicable to a case of this character? The rule that ordinarily a parent corporation is not liable for debts contracted in the name of its incorporated subsidiary is subject to exceptions. Where the subsidiary is a scheme or device to enable the par-' ent to avoid its own obligation as' distinguished from the
 
 bona fide
 
 obligations of the subsidiary, the law will pierce the corporate entity of the latter to reach the parent as the real debtor. Fraud of the parent is not an indispensable ingredient of the creditor’s right of action but, if existent and relevant, it may be shown as an aid to recovery. If the subsidiary is a mere agent, arm, instrumentality or department of the parent in the transaction in which the debt is incurred, such debt is that of the parent regardless of the existence of fraud. The subsidiary is often spoken of as a “dummy” where it merely serves the parent’s purposes and the obligation is, in fact, that of the parent itself.
 

 There is ample authority upon this question. In
 
 Parkside Cemetery Assn.
 
 v.
 
 Cleveland, Bedford & Geauga Lake Traction Co.,
 
 93 Ohio St., 161, 112 N. E., 596, the judge writing the opinion states at page 173: “Referring to ‘dummy’ corporations, Thompson, in volume 2 of his work on Corporations, Section 1417, says: ‘These corporations are usually termed “dummy” corporations. Concerning them the New York court of appeals has said: “We have of late re
 
 *529
 
 fused to be always and utterly trammelled by tbe logic derived from corporate existence where it only serves to distort or hide the truth.’ ” And on page 174: “ # is eaSy to conceive of a situation in which it would contribute to the public welfare, instead of being a detriment to it, if one corporation should lend assistance, financially and otherwise, to the carrying out of the purposes of another corporation which was duly organized and actually proceeding with the performance of its corporate duties and the exercise of its corporate rights, in the accomplishment of the purposes of its organization. But it is a very different thing when one corporation causes a ‘dummy’ corporation to be organized, even if all the forms of the law should be fully complied with, if the latter has no real and
 
 bona fiide
 
 purpose of its own and no intention to attempt to actually carry out the object of its organization as set out in its articles of incorporation.” •
 

 In the case of
 
 Auglaize Box Board Co.
 
 v.
 
 Hinton,
 
 100 Ohio St., 505, 126 N. E., 881, it is stated in the opinion on page 518: ‘ ‘ There is a consistent determination by courts to look through corporate forms, and this disposition is shown with increasing firmness as the interests of justice require.
 

 “In
 
 State, ex rel.,
 
 v.
 
 Standard Oil Co.,
 
 49 Ohio St., 137 [30 N. E., 279], it was held: ‘That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an interest and purpose not within its reason and policy, may be disregarded.’
 

 “To the same effect are
 
 The Cincinnati Volksblatt Co.
 
 v.
 
 Hoffmeister,
 
 62 Ohio St., 189 [56 N. E., 1033],
 
 First Natl. Bk. of Chicago
 
 v.
 
 Trebein Co.,
 
 59 Ohio St., 316 [52 N. E., 834] and
 
 Parkside Cemetery Assn.
 
 v.
 
 The C., B. & G. L. Traction Co.,
 
 93 Ohio St., 161, 168.” In the case of
 
 Chicago, Milwaukee & St. Paul Rail
 
 
 *530
 

 way Co.
 
 v.
 
 Minneapolis Civic & Commerce Assn.,
 
 247 U. S., 490, 62 L. Ed., 1229, 38 S. Ct., 553, the rule is thus stated at pages 500 and 501: “Much emphasis is laid upon statements made in various decisions of this court that ownership, alone, of capital stock in one corporation by another, does not create an identity of corporate interest between the two companies, or render the stockholding company the owner of the property of the other, or create the relation of principal and agent or representative between the two. * * * While the statements of the law thus relied upon are satisfactory in the connection in which they were used, they have been plainly and repeatedly held not applicable, where stock ownership has been resorted to, not for the purpose of participating in the affairs of the corporation in the normal and usual manner, but for the purpose, as in this case, of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company or companies.
 
 United States
 
 v.
 
 Lehigh Valley Rd. Co.,
 
 220 U. S., 257, 273 [55 L. Ed., 458, 31 S. Ct., 387], and
 
 United States
 
 v.
 
 Delaware, Lackawanna & Western Rd. Co.,
 
 238 U. S., 516 [59 L. Ed., 1438, 35 S. Ct., 873]. In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law, but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require.”
 

 Similar language was used in the case of
 
 United States
 
 v.
 
 Reading Co.,
 
 253 U. S., 25 at page 62, 64 L. Ed., 760, 40 S. Ct., 425. “It results that it may confidently be stated that the law upon this subject now is, that while the ownership by a railroad company of shares of the capital stock of a mining company does not necessarily create an identity of corporate interest between the two such as to render it unlawful under the commodities clause for the railroad company to
 
 *531
 
 transport in interstate commerce the products of such mining company, yet where such ownership of stock is resorted to, not for the purpose of participating in the affairs of the corporation in which it is held in a manner normal and usual with stockholders, but for the purpose of making it a mere agent, or instrumentality or department of another company, the courts will look through the forms to the realities of the relation between the companies as if the corporate agency did not exist and will deal with them as the justice of the case may require. * *
 
 *
 
 ”
 

 The problem was under discussion in the case of
 
 Berkey
 
 v.
 
 Third Avenue Ry. Co.,
 
 244 N. Y., 84, at page 94, 155 N. E., 58, 50 A. L. R., 599. “The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor. Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it. We say at times that the corporate entity will be ignored when the parent corporation operates a business through a subsidiary which is characterized as an ‘alias’ or ‘dummy’. All this is well enough if the picturesqueness of the epithets does not lead us to forget that the essential term to be defined is the act of operation.
 
 Dominion may be so complete, interference so obstrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent.
 
 Where control is less than this, we are remitted to the tests of honesty and justice (Ballentine, Parent & Subsidiary Corporations, 14 California Law Review, 12, 18, 19, 20). The logical consistency of a juridical conception will indeed be sacrificed at times when the sacrifice is essential to the end that some accepted public policy may be defended or upheld. This is so, for illustration, though agency in any proper sense is lacking, where the attempted separation between parent and subsidiary will work a fraud upon the law.
 
 (Chicago Ry. Co.
 
 v.
 
 Minn. Civic
 
 
 *532
 

 Assn.,
 
 247 U. S., 490,
 
 United States
 
 v.
 
 Reading Company,
 
 253 U. S., 26, 61, 63).” (Italics mine.)
 

 In 1 Fletcher Cyclopedia of Corporations, Section 43, page 154, the author and compiler summarizes the law from cited authorities in this language:
 
 “A
 
 very numerous and growing class of cases wherein the corporate entity is disregarded is that wherein it is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit or adjunct of another corporation.”
 

 The indices of parent liability emphasized in these pronouncements are almost universally accepted in the adjudicated cases in other jurisdictions.
 
 Platt
 
 v.
 
 Bradner Co.,
 
 131 Wash., 573, 230 P., 633;
 
 Bishop
 
 v.
 
 United States,
 
 16 F. (2d), 410;
 
 Central Republic Trust & Bank Co.
 
 v.
 
 Caldwell,
 
 58 F. (2d), 721-735;
 
 Oriental Investment Co.
 
 v.
 
 Barclay,
 
 25 Tex. Civ. App., 543, 64 S. W., 80, 86;
 
 Minifie
 
 v.
 
 Rawley,
 
 187 Cal., 481, 487;
 
 Wenban-Estate Inc.
 
 v.
 
 Hewlett and Mills,
 
 193 Cal., 675, 695;
 
 Holbrook Corp.
 
 v.
 
 Perkins,
 
 147 F., 166, 167, 169;
 
 Foard
 
 v.
 
 State of Maryland,
 
 219 F., 827, 829;
 
 Portsmouth Cotton Oil Refining Corp.
 
 v.
 
 Fourth National Bank,
 
 280 F., 879, 881, 882;
 
 Dillard & Coffin Co.
 
 v.
 
 Richmond Cotton Oil Co.,
 
 140 Tenn., 290, 292, 204 S. W., 758;
 
 Mirabito
 
 v.
 
 San Francisco,
 
 8 Cal. App. (2d), 54, 47 P. (2d), 530.
 

 This case has two aspects, one narrow, the other broad. In considering the narrow aspect,' it is only necessary to recite certain undisputed facts. The long-term lease in which the subsidiary was named as lessee expires in 2007. All officers and directors of the subsidiary were officers and directors of the parent. The president and secretary of the parent company occupied the same positions, relatively, with the subsidiary company. At the same time that this long-term lease was entered into, the parent caused a lease to be executed and delivered to it from the subsidiary covering the same premises and containing the same provisions
 
 *533
 
 as to rent and otherwise except it ran for only ten years. The president and secretary signed this ten-year lease on behalf of each company; thus these two officers acting at the same time for both companies, in effect, made an agreement with themselves. There were no adverse contracting parties as to this ten-year lease, and the domination and control of the parent made it within its power to abrogate the ten-year lease at its pleasure. The question is: May the parent be held for rent on the long-term lease which it has caused to be taken in the name of the subsidiary?
 

 The problem is important because, if the plan affords immunity, it opens up a new way for a parent company tQ occupy and enjoy premises under a lease which it can control without being liable for the rent except to a limited extent. The obvious advantage to the parent is that it ‘ ‘ could, whenever its convenience should require, claim the leasehold as its own, or push it off on its subsidiary.” It would seem that the court should hesitate to sanction such a device, and that it should be held invalid as a shield for debt, on the ground of public policy. Obviously, a person cannot contract with himself, and by parity of reasoning/two persons who are president and secretary of parent and subsidiary cannot act for both at the same time in making a contract. The ten-year lease should be disregarded in law and the long-term lease regarded as made in the name of the subsidiary for the benefit of parent as the undisclosed principal.
 

 However that may be, such is the narrower aspect of the matter at hand. There is a broader inquiry to be made. Was there a question of fact for the determination of the trial court? If so, final judgment for plaintiff in error could not be entered here. All the facts are not recited in the majority opinion and it is impossible to cover them fully in an opinion of reasonable length. No attempt to do so will be made. We shall merely endeavor to recite facts proven which
 
 *534
 
 were favorable to plaintiff below and required submission of tbe case to tbe judge, tbe trier of tbe questions of fact, since a jury had been waived.
 

 Tbe action was for rent and did not sound in tort. An examination of tbe petition shows plaintiff’s claim to be that tbe obligation for rent under tbe long-term lease was in fact tbe obligation of tbe parent. Tbe plaintiff’s contentions are (1) that tbe defendant is liable regardless of fraud, wrong or injustice because tbe subsidiary is a “dummy” corporation and a mere instrumentality, arm, agency, or department of tbe defendant; (2) that tbe defendant so used, operated and manipulated tbe subsidiary as to perpetrate a fraud, wrong, or injustice upon tbe plaintiff; and (3) that the defendant is tbe real lessee, has assumed the obligations of tbe lease, is liable thereon and is estopped to deny its liability.
 

 There is no finding of facts in tbe trial court but merely a judgment for rent. If tbe judgment is correct upon any theory, or a question of fact was presented, it must stand.
 

 Evidence was adduced to show that tbe subsidiary had no business after tbe long-term lease was executed, except to bold that lease, and from that day bad no employees or separate place of business, and its own capital was wholly inadequate to warrant it in assuming so great an obligation for rent; on January 31, 1923, the defendant completely discarded the subsidiary and transferred to itself on its books the assets and liabilities theretofore held or owing in the name of tbe subsidiary. Tbe only asset was the leasehold and the only obligation was for rent. Thereafter in 1923 the defendant, in a public circular for the sale of $1,500,000 of its preferred stock, declared itself tbe owner of long-term leaseholds and a building valued on its books at $2,102,549.54. From January 31, 1923, tbe defendant ignored tbe existence of tbe subsidiary and paid rent, insurance, taxes, and other expenses
 
 *535
 
 incident to the long-term lease direct, and kept the books. During this time the subsidiary kept no books and ceased to function in the transaction of business:
 

 The ten-year lease was never recorded and the trial court might properly hold that it had been concealed. When the leasehold certificates were put out by the Union Trust Company, as trustee, in 1925, the prospectus did not mention the ten-year lease but used language which gave rise to the inference and impression that The Higbee Company’s name and credit were behind them, that rentals remained fixed until the year 2007, that the business was old and established and that the buildings were carried by The Higbee Company at a depreciated value of $2,259,536. It is urged that the trustee that put out these certificates knew of the ten-year lease and that this was notice to those who bought the certificates. If the certificate buyers had known that the defendant had a lease with only about seven years more to run and were not liable for the rents beyond that time, they would not have bought these certificates. It is a strange doctrine to say that the trustee, by concealing this vital fact, in the sale, bound the buyer. The deduction that notice to the trustee was notice to the purchaser is based on the false assumption that the trustee was acting for the purchaser instead of dealing with him at arm’s length in selling the security. A trustee may be an agent of the beneficiary if the terms of the trust make him such. In this instance, there was no such agency in the sale, but merely the relation of vendor and vendee.
 

 In September, 1931, the premises were abondoned and the department store removed to the Public Square. Entries were made on the books of the defendant transferring assets and liabilities back to the subsidiary. On June 1, 1932, the defendant ceased to pay rent, severed all connection with the subsidiary, caused its name to be changed to 1277 Euclid Realty Company, and cast it adrift. What books it had were
 
 *536
 
 finally found in a garage. Here is where the wrong was consummated. A loophole had been left of which advantage was taken. By abandoning the premises for other quarters, the only means the subsidiary had of paying rentals was taken away. The business had been prosperous up to that time and no good reason seems to have existed for moving except to exploit another site. The steps were taken deliberately with knowledge that the leasehold certificate holders would be left high and dry.
 

 There is other evidence to which attention could be called, but enough has been stated to show that a question of fact was presented. Of course there was contradictory evidence or evidence from which conflicting inferences could arise, and there was evidence adduced in rebuttal to explain damaging evidence offered by plaintiff. If the trial court believed plaintiff’s evidence and put the construction on it most favorable to plaintiff, there was concealment and wrong and fraud. There was a mixed question of law and fact for the determination of the lower court. The Court of Appeals held the finding and judgment of the lower court were not against the weight of the evidence and there is no error apparent on the face of the record.
 

 The majority opinion cites the case of
 
 Gledhill
 
 v.
 
 Fisher & Co.,
 
 272 Mich., 353, 262 N. W., 371. In that case the elements which we have here were lacking, as will be shown by the statement on page 64:' ‘ ‘ There is no proof in this case that the defendant (subsidiary) corporation was in any way the agent or tool of the corporation which controlled its capital stock, or that it was not a corporation organized in good faith to pay for, acquire and hold the property purchased.”
 

 A careful analysis of all the cases cited by defendant will disclose, it is believed, that the law is as has heretofore been stated. In the last analysis, the conclusions reached must depend upon the fact in the particular case. It would be difficult to imagine a case in which
 
 *537
 
 the evidence would be more favorable to the right of recovery than that adduced by plaintiff. The parent corporation did practically all it could have done to make the obligation for rent its own except to take the long-term lease in its own name. The trial judge was justified, if he saw fit, in finding that the defendant practiced fraudulent concealment of the ten-year lease, held itself out as being behind the long-term lease, as principal, with its credit and responsibility absolutely and obtrusively dominating the subsidiary, and that the obligation for rent was that of the defendant.
 

 In my opinion the judgment should be affirmed.