## MARSHALL et al. v. OTTO et al.

### (Circuit Court, D. Nevada. December 11, 1893.)

### No. 572.

1. EQUITY PLEADING—PLEAS—WAIVER.
   The right to rely on a plea in abatement is waived by including in the same pleading an answer to the merits.

2. COURTS—STATE AND FEDERAL—CONFLICTING JURISDICTION.
   The pendency of a prior suit in a state court is not a bar to a suit in a federal court, even on the same cause of action.

3. JUDGMENT—RES JUDICATA—DISMISSAL.
   A judgment of dismissal by consent, which shows on its face that it is not the result of an adjustment of the controversy, is not a bar to a subsequent suit. Merritt v. Campbell, 47 Cal. 542, distinguished.

4. PLEDGE—WAIVER—ATTACHMENT.
   The levy of an attachment by a pledgee upon property in the hands of its pledge holder, and its consent to the levy of a similar attachment by another creditor of the pledgor, is not a waiver of the pledge, or of the pledge holder's right of possession, as against purchasers having notice thereof, when such attachment is made on the ground of defendant's nonresidence, and for the purpose of preventing the pledgor from fraudulently placing the property in the possession of his wife under a bill of sale.

5. RECEIVERS—DISCHARGE—EFFECT OF.
   An order discharging a receiver of personal property, and authorizing him to restore it to one of the parties, does not of itself determine the right of possession, the same being made without notice to the opposite party, and before any decision on the merits.

At Law. Action by James Marshall and the Bullion & Exchange Bank against A. Otto and M. Healey for claim and delivery of personal property and for damages. Judgment for plaintiffs.

Statement by HAWLEY, District Judge:

On December 29, 1890, M. E. Spooner made, executed, and delivered to the Bullion & Exchange Bank, in Ormsby county, Nev., a chattel mortgage of 200 head of horses, more or less, branded ⊗ on the left shoulder, including 3 thoroughbred stallions and the increase of the stock; also, 600 head of cattle, more or less, branded SP on the right hip, with all the increase thereof, situated in Ash Valley, Lassen county, Cal.,—to secure the payment of a certain promissory note for $20,000, given for amount of Spooner's overdraft accounts at the bank, payable on or before three years after date, with interest payable monthly thereon at the rate of 9 per cent. per annum. No possession of the property was taken at the time of the execution of the mortgage. This mortgage was recorded in the county re

corder's office of Lassen county on January 9, 1891. On the same day of the execution of the chattel mortgage, M. E. Spooner made, executed, and delivered to the Bullion & Exchange Bank a deed of certain real estate situate in Lassen county, Cal., designated as the "Spooner Ranch," containing 1,360 acres, more or less. This deed was intended as a mortgage to further secure the payment of the same note, debt, and account as set forth in the chattel mortgage, and was recorded in the recorder's office of Lassen county at the same time. On the 12th of August, 1892, M. E. Spooner was indebted to the bank in the sum of $11,055.39, and desired further advances to be made to him, which the bank refused to make unless better security was given. Several days were spent in negotiations between the parties, which finally resulted in the execution of a written agreement on the 12th of August, which was signed by the bank and M. E. Spooner, and attached to the chattel mortgage. This agreement reads as follows: "We, the under-signed parties to the annexed instrument, hereby agree and designate James Marshall, Esq., as a pledge holder, to take possession of the personal property described in said instrument, and hold the same as a pledge to secure the payment of the note and debt set out therein, and we hereby authorize and instruct said James Marshall to take immediate possession of said personal property, (cattle and horses,) and hold the same for such purpose as is provided in the laws of California." Section 2988 of the Civil Code of California provides that "the lien of a pledge is dependent on possession and no pledge is valid until the property pledged is delivered to the pledgee, or to a pledge-holder as hereinafter prescribed." Section 2993 provides that "a pledgor and pledgee may agree upon a third person with whom to deposit the property pledged, who, if he accepts the deposit, is called a pledge-holder."

On the 19th of August, 1892, James Marshall, the pledge holder, took possession of 160 head of horses, 2 stallions, and 60 colts, of the value of $2,400, and 326 head of cattle and 100 calves, of the value of $3,912, making a total of $6,312; said property being upon the Spooner ranch, or range, in Ash Valley, Lassen county, branded with the Spooner brands, being the property included and described in the chattel mortgage given by M. E. Spooner to the bank. On the 24th of August, 1892, after the pledge holder had taken possession of the personal property, and when he was in the possession thereof under the terms of the agreement appointing him a pledge holder, M. E. Spooner made, executed, and delivered to his wife, Clara Spooner, a bill of sale of said personal property. On the same day M. E. Spooner made, executed, acknowledged, and delivered to his wife a deed of the Spooner ranch, which was thereafter recorded in the recorder's office of Lassen county. At the time of the execution of the bill of sale and the deed, and for some time prior thereto, Mrs. Clara Spooner had knowledge of her husband's indebtedness to the bank, of the execution of the deed of the Spooner ranch, and of the chattel mortgage executed by her husband and delivered to the bank, and of the appointment of the pledge holder, and of the fact that the pledge holder was then in the possession of the personal property. At that time, however, she claimed that the pledge holder was not in the possession of the personal property, and thereafter, in various ways, endeavored to get rid of the pledge holder, and to obtain the possession of all of said personal property, and asserted her right of possession thereto. On the 7th of September, 1892, Mrs. Clara Spooner made an inventory of her separate property, which included the personal property then in the possession of the pledge holder, and duly recorded the same in the recorder's office of Lassen county.

On the 24th of September, 1892, the Bullion & Exchange Bank brought suit against M. E. Spooner in the superior court of Placer county, Cal., to recover the sum of $11,996.86, which it alleged was due from Spooner to the bank upon his checks, and upon open, overdraft accounts. A writ of attachment was obtained in said suit upon the affidavit of Trenmor Coffin, who was a director of, and one of the attorneys for, the bank, setting forth the fact that the indebtedness was due upon an express contract for the direct payment of money, and "that the defendant is now, and was at the time said contract was made, a nonresident of the state of California."

On the same day—September 24, 1892—one R. Munro, as the administrator of the estate of J. M. Short, commenced suit in the same court against M. E. Spooner for $8,978.44, and caused a writ of attachment to be issued therein. These writs of attachment were taken by Mr. Coffin to Lassen county, Cal., and were there delivered to F. P. Cady, the sheriff of Lassen county, with written instructions to said sheriff from the attorneys in both of said suits to execute the same "by taking into actual custody all personal property heretofore owned and claimed by said Spooner, and being in Lassen county, state of California, whether the same be claimed by third parties or not;" also, to levy the writs upon a portion of the Spooner ranch which, it is claimed, was inadvertently omitted from the description in the deed. These instructions were obeyed, and the property mentioned therein attached, and actual possession of the personal property taken by the sheriff, on the 28th day of September, 1892. On October 3, 1892, Mrs. Clara Spooner commenced an action against Sheriff Cady for the recovery of the personal property, alleging that the same was wrongfully taken from her possession, without her consent, and for damages.

On the 25th of October, 1892, the Bullion & Exchange Bank brought suit in the superior court of Lassen county against M. E. Spooner to foreclose the mortgage upon the Spooner ranch, and upon the personal property,—horses, cattle, hay, and grain,—for the sum of $12,146.50, the amount then alleged to be due and owing and unpaid upon the note and mortgage. Clara Spooner, wife of M. E. Spooner, —— Munro, the administrator of the estate of —— Short, and Anthine Presau, were made parties defendant, as each of them asserted and claimed an interest in the property. It was alleged in the complaint, among other things, that M. E. Spooner had fraudulently misrepresented the amount and value of the property; that in September, 1892, he had fraudulently conspired with his wife to defraud the bank; that his wife claimed to own all the property, and threatened to sell and dispose of the same, and to remove the horses and cattle away from the ranch and from Lassen county. Upon the filing of this complaint the court, without notice to defendants, upon motion of plaintiffs, made an order appointing F. D. Cady, the sheriff of Lassen county, receiver of the real estate and personal property, and said sheriff then took possession of said property as receiver. On November 15, 1892, after the defendants had answered, the court, upon motion of defendants, without notice to plaintiff, made an order removing and discharging the receiver, and authorized and directed him to deliver to the defendant Clara Spooner the possession of all the property, which order was obeyed by the receiver.

On the 18th of November, 1892, Otto & Healey, the defendants in this action, bought the personal property,—horses and cattle, hay and grain, and the farming implements,—on the Spooner ranch, from Mrs. Clara Spooner, for the sum of $9,700, and took possession thereof. They paid $4,000 in cash, and gave two duebills for the balance,—one for $2,700, due in January, 1893; the other for $3,000, due in April, 1893. The sum of $200 was thereafter paid on one of the duebills. Neither of the duebills has since been presented to them, and no payments have been requested or made thereon. Prior to the time of the purchase of the property, Otto & Healey had actual knowledge of the pending litigation, and were informed that the bank had a claim on the property which was unsettled. On the 6th of February, 1893, on motion of plaintiffs, the attorneys for defendants consenting thereto, and waiving their costs, the court in Placer county dismissed the attachment suit of Bank v. Spooner, and entered the following judgment: "It is therefore ordered, adjudged, and decreed that the above action be, and the same is hereby, dismissed; each of the parties hereto paying his own costs."

On March 21, 1893, the present suit was commenced in this court by James Marshall, the pledge holder, and the Bullion & Exchange Bank, as plaintiffs, against the defendants, Otto & Healey, for the possession of the personal property,—horses and cattle, hay and grain,—on the Spooner ranch, and for the value thereof in case delivery cannot be had. On May 10, 1893, the defendants appeared in this court, and filed their answer, denying plaintiffs' right to the possession of the property, or any part thereof; denying that plaintiffs ever demanded the return of the property to them, or that plain-

tiffs have been damaged; and alleged title and right of possession in themselves. Their answer sets up the bringing of the various suits before mentioned, and pleads the judgment in the superior court of Placer county, and the pendency of the foreclosure suit in Lassen county, as a plea in abatement, and plea in bar, of this action. These pleas were not separately set up in a preliminary answer, but were pleaded in the answer with other matters setting up a defense to the merits of the action. On August 3, 1893, upon motion of plaintiffs' counsel, the order and judgment of dismissal in the Placer county attachment suit was amended so as to read as follows: "It is therefore ordered, adjudged, and decreed that the above action be, and the same is hereby, dismissed." The Bullion & Exchange Bank paid the taxes on the real estate and personal property for the year 1892, and the defendants paid the taxes on the personal property for the year 1893. The plaintiffs in this action are residents and citizens of the state of Nevada, and the defendants are residents and citizens of the state of California.

Trenmor Coffin, (Goodwin & Dodge, of counsel,) for plaintiffs.
James R. Judge, (A. L. Shinn, of counsel,) for defendants.

HAWLEY, District Judge, (after stating the facts.) 1. As to the pleas. The defendants, by answering to the merits, have waived their right to rely upon their plea in abatement. It is a well-settled rule of practice in the national courts that matters in abatement can, in general, only be set up by plea or demurrer, and that a defendant, by answering, waives any such objection. 1 Fost. Fed. Pr. § 125, and authorities there cited; Story, Eq. Pl. § 708; Livingston v. Story, 11 Pet. 393; Wickliffe v. Owings, 17 How. 51; Pierce v. Feagans, 39 Fed. 588. Rule 9 of this court is conclusive upon this question:

"All matters in abatement shall be set up in a separate preliminary answer, in the nature of a plea in abatement, to which the plaintiff may reply or demur; and the issue so joined shall be determined by the court before the matters in bar are pleaded. And when any matter in abatement, other than such as affects the jurisdiction of the court, shall be pleaded in the same answer with matter in bar, or to the merits, or simultaneously with an answer of matter in bar, or to the merits, the matters so pleaded in abatement shall be deemed to be waived."

The pendency of a prior suit in a state court cannot be pleaded in bar of a suit in the circuit court of the United States, even if it is for the same cause of action. The two courts, though not foreign to each other, belong to different jurisdictions in such sense that the doctrine of the pendency of the suit is not applicable. This rule is now almost universally applied in all cases where the pendency of the prior suit is in another state or district from that in which the national court is held. Sharon v. Hill, 22 Fed. 28; Washburn & Moen Manuf'g Co. v. H. B. Scutt & Co., Id. 710; Pierce v. Feagans, 39 Fed. 588; Rawitzer v. Wyatt, 40 Fed. 609; Stanton v. Embry, 93 U. S. 554; Gordon v. Gilfoil, 99 U. S. 178; 1 Fost. Fed. Pr. § 129.

But if the pleas in abatement and in bar were properly before the court upon their merits, they could not be sustained, because the causes of action and the parties thereto are different. The suit in Placer county was for a money demand against M. E. Spooner. The suit in Lassen county was to foreclose a mortgage upon real and personal property. This is a suit in the nature of replevin, to

recover the possession of certain personal property which it is claimed was wrongfully taken from the possession of the pledge holder, who was acting under and by virtue of the appointment by M. E. Spooner and the Bullion & Exchange Bank, and for the value of said personal property in case delivery of possession could not be had, and damages for the detention thereof. It is true that the debt due from M. E. Spooner to the bank constitutes the foundation of all the suits; but the causes of action are not the same. The suit in Placer county was improperly brought, and could not have been sustained. The judgment of dismissal, as first entered, "each of the parties hereto paying his own costs," might, under the rule announced in Merritt v. Campbell, 47 Cal. 542, have amounted to a retraxit, and, if it had not been amended, it could have been pleaded in bar to another suit afterwards brought in another court of the same state, upon the same cause of action. But the plaintiff therein, upon being informed of the terms of the judgment, moved the court to amend it so as to conform to the intention of the parties, and it was amended so that the final judgment of dismissal reads: "It is therefore ordered, adjudged, and decreed that the above action be, and the same is hereby, dismissed." This entry shows upon its face that the judgment of dismissal was not the result of an adjustment of the subject-matter in controversy in that suit, and takes the case out of the rule announced in Merritt v. Campbell, which was based upon the ground that each party was adjudged to pay his own costs; and, for obvious reasons, the doctrine as therein set forth ought not to be extended beyond the limits fixed by that authority. Landregan v. Peppin, 94 Cal. 465, 29 Pac. 771.

The pendency of the foreclosure suit in the superior court of Lassen county constitutes no bar to the prosecution of this action. Any judgment that may be rendered in this case will not in any manner interfere with any judgment that has been, or may hereafter be, rendered in that case. They are entirely different causes of action, and each suit has its own appropriate remedy. If the defendants have wrongfully taken the possession of the property from the plaintiffs, they can be required to restore the possession thereof to the plaintiffs, so that it may be retained by them, to abide any judgment that may finally be rendered in the foreclosure suit; and, if possession of the property cannot be given, the plaintiffs would be entitled to recover the value thereof; otherwise, the foreclosure of the mortgage, if eventually ordered in the superior court, might become an absolute nullity by the wrongful act of the defendants in this action, and plaintiffs might be left entirely remediless in the premises. The defendants acquired their rights, if any they have, in the premises, subsequent to the commencement of the foreclosure suit, and, if they rightfully obtained the possession of the property, they are entitled to a judgment in their favor for the costs.

2. As to the merits. It appearing to the satisfaction of the court, from the evidence submitted in this case, that the pledge holder took the possession of the property with the consent and written

authority of the parties to the chattel mortgage, it follows that unless the plaintiffs, by some act of theirs, have legally parted with the possession thereof, or done some act which legally deprived them of the possession and right of possession thereto, they are entitled to recover in this action. It is earnestly contended by defendants that the issuance of the writ of attachment in the Placer county suit, and levying the same upon the property, amounted to a waiver and abandonment of the possession of the pledge holder, and deprives the bank of any lien or right of possession which the plaintiffs might previously have had to the property. It is also claimed that the fact of the bank's consenting to the levy of the attachment in Munro v. Spooner had the same effect. It is further asserted that Mrs. Clara Spooner rightfully obtained the possession of the personal property by the order of the court discharging the receiver in the foreclosure suit, and directing him to deliver the personal property to her. In determining the effect of these proceedings, in connection with other minor matters discussed by counsel, the position in which the various parties stand, in relation to the property and of their rights, claims, and interest therein, must be clearly and constantly kept in view, for every case must stand or fall upon its own particular facts. There is no dispute as to the fact that M. E. Spooner is indebted to the bank. It was asserted by defendant's counsel in the oral argument that the debt is not yet due, and that the foreclosure suit was prematurely brought; but in this connection he said that, when the debt became due, it would be paid; but be that as it may, for the question whether the debt is due or not, or whether it will finally be paid, is not involved in this case. The question here is whether the plaintiffs in this action are entitled to the possession of the personal property. In deciding this question, the primary fact is the existence of the debt of M. E. Spooner to the bank. The particular amount of the debt is not involved. The next important question is the fact that neither Mrs. Clara Spooner nor the defendants, Otto & Healey, were creditors of M. E. Spooner, nor were they innocent purchasers, for value, of the property. They are not entitled to any rights, and are not in a position to claim any privileges, that could not be asserted and maintained by M. E. Spooner. They stand in his shoes.

It may be conceded, for the purposes of this case, that the conduct and action of the bank, as above stated, were such as to prevent it from asserting any claim, or lien, or right of possession to the property as against creditors of M. E. Spooner, or innocent purchasers for value, who had obtained any claim or rights to the property. To such effect are the authorities of Citizens' Bank v. Dows, 65 Iowa, 460, 27 N. W. 459; Wingard v. Banning, 39 Cal. 543; and other authorities cited by defendants. But the facts of this case take it out of the rule announced in such cases.

Would M. E. Spooner be entitled to claim and hold the property? Could M. E. Spooner claim that the levying of the attachments upon the personal property defeated the lien and right of possession of plaintiffs? The affidavit for the attachment in the suit of Bank v. Spooner was not based upon the ground that the plaintiffs

in the suit had no lien upon real or personal property, but it was procured upon the ground that the defendant was a nonresident of the state of California. The commencement of the Placer county suit was wholly unwarranted in law, unauthorized by the facts, and cannot be justified upon any ground. Counsel, in bringing that suit, evidently misconceived the remedy which the plaintiffs were entitled to, and thereafter sought to rectify the mistake by procuring a dismissal of the case. But a party who imagines he has two or more remedies, or who misconceives his rights, is not to be deprived of all remedy because he first tries a wrong one. Peters v. Ballistier, 3 Pick. 505; notes to Fowler v. Bank, [21 N. E. 172,] 10 Amer. St. Rep. 488; Bunch v. Grave, 111 Ind. 357, 12 N. E. 514. Mr. Coffin testified that he was induced to institute the suit, and to cause the levy of the attachment, upon information which he at the time believed to be reliable, to the effect that Mrs. Spooner had wrongfully obtained the possession of the property from the custody of the pledge holder, and was attempting to remove the same from the state of California, and that the object of bringing the suit was to prevent such action on her part, and enable the bank to regain the possession of the property so as to subject it to the lien of the chattel mortgage. The evidence shows that the suit would not have been brought except for the steps taken by M. E. Spooner in conveying the property to his wife, and her action in endeavoring to remove the pledge holder from the possession of the property, and to obtain possession of the same. The bringing of the suit and the levy of the attachment were not the result of the voluntary action of the bank, but were caused by the wrongful act of the mortgagor and pledgor of the personal property, and he is not in a position to take any advantage of such proceedings upon the part of the bank; this, upon the familiar principle that a party cannot take advantage of his own wrong in order to relieve himself from the payment of a just debt. The general principles herein announced are as applicable, in my opinion, to the case of Munro v. Spooner, as to the case of the bank, although the facts are somewhat different.

The order of the court in the foreclosure suit, directing the receiver to deliver the property to Mrs. Clara Spooner, cannot be considered as an adjudication of the rights of the parties to the possession of the property. If her possession was wrongful, the restoring the possession to her in that manner did not make it rightful. The fact of the appointment of the receiver did not, of itself, determine that the bank was entitled to the possession, and the fact that the receiver was discharged does not, of itself, determine that the bank was not entitled to the possession. The appointment of the receiver might have been wrongfully obtained, although the bank was lawfully entitled to the possession of the property, and the order discharging the receiver might have been properly made, on the ground that his appointment was irregularly or wrongfully obtained, without in any manner determining who was legally entitled to the possession of the property. In Von Roun v. Superior Court, 58 Cal. 358, the court said:

"The appointment of a receiver works no injury to the least right of any one. It would be strange if it did. The receiver is the hand of the law, and the law conserves and enforces rights; never destroys them. His appointment determines no right, and in no way affects the title of any party to the property in litigation."

See, also, 3 Pom. Eq. Jur. § 1336. The views herein expressed dispose of all the objections raised against the right of the plaintiffs to recover in this action.

The only question remaining is as to the right of plaintiffs to recover the hay and grain upon the Spooner ranch. The testimony was to the effect that it was orally agreed between the parties that the pledge holder should take possession of the hay and grain; but in weighing the testimony it seems only to go to the extent of authorizing the possession of the hay and grain for the purpose of feeding the stock, (horses and cattle.) It is doubtful whether this testimony was admissible for any purpose. Under all the facts of this case, the judgment will be confined to the personal property mentioned in the agreement appointing the pledge holder.

While some of the parties who are interested in the disposition of this case have been wrangling over the possession of the property, and others have been bitterly engaged in much unnecessary litigation, the cattle in controversy, brute creatures as they are, have been pursuing a much better course, and perhaps setting all the parties a good example, by quietly chewing the cud of peace, and all the stock, in a more compromising spirit than has so far been evinced by any of the parties, has been peacefully eating the hay and grain, and has had the benefit of at least a portion thereof. The plaintiffs are entitled to recover the possession of the horses and cattle, and, if recovery cannot be had, they are entitled to recover the value thereof, to wit, the sum of $6,312, and the costs of this suit.

The clerk will enter judgment accordingly.