Argued January 19, reversed and remanded with directions February 15, 1921.

# HARDY v. OREGON EILERS MUSIC HOUSE.

### (195 Pac. 563.)

**Bankruptcy—Trustee may Maintain Suit Against Dummy Holder of Assets.**

1. Under Bankruptcy Act, Section 70, subdivision "e" (U. S. Comp. Stats., § 9654), trustee of bankrupt may maintain a suit for the appointment of a receiver and the marshaling of the assets of defendant, it being a mere dummy and nothing more than an agent of bankrupt, its assets being and always having been, at least equitably, bankrupt's property, and they being in danger of being dissipated and fraudulently made away with to the injury and depletion of bankrupt's estate and the detriment of its creditors.

**Pleading—Stating Acts Necessarily Fraudulent Sufficient Allegation of Fraud.**

2. Fraud may be pleaded by the allegation of acts necessarily fraudulent, without use of the term "fraud" or "fraudulently."

**Courts—Suit in State Court by Trustee in Bankruptcy Held not Prevented by Proceeding in Federal Court.**

3. Suit in state court by trustee in bankruptcy to marshal assets is not prevented by some proceeding having been attempted in federal court to get an accounting as to such assets, it not appearing it was a suit to marshal assets, and there being no plea of pendency of another suit against defendant.

**Bankruptcy—Complaint of Trustee Held to State a Case for Discovery and Marshaling Concealed Assets of Bankrupt.**

4. Complaint of trustee *held* to state a case for discovery and marshaling concealed assets of bankrupt on the theory that defendant was a mere agent of bankrupt, having no assets of its own, but doing business on bankrupt's assets, and that it was fraudulently disposing of the assets in such way that they would be lost to bankrupt's estate.

From Multnomah: Calvin U. Gantenbein, Judge.

Department 1.

This suit was begun in the Circuit Court of Multnomah County for the purpose of securing the appointment of a receiver of the defendant corporation and its property and effects, to hold the same in aid of proceedings in bankruptcy begun and being conducted in the United States court against Eilers

Music House, which is not to be confounded with the defendant, although the names are similar.

The writer has found it impossible to condense the complaint so as to give its substance only, and therefore gives it entire, omitting the formal parts only:

"I.    That he is the duly qualified, acting, and selected trustee of Eilers Music House, bankrupt, and authorized by the District Court of the United States in and for the District of Oregon, in bankruptcy sitting, and by that court directed to bring this suit.

"II.    That Eilers Music House was adjudicated bankrupt in February, 1918, and a reference taken in that cause in bankruptcy to the referee of that court, and said cause in bankruptcy is yet pending and undisposed of.

"III.    That the aforesaid Eilers Music House was and is the successor in interest of Eilers Piano House, and Eilers Piano House was and is the successor in interest of various previous concerns, including the firm of Eilers & McCormick, composed of Hy J. Eilers and S. J. McCormick, in the early days when the name of Eilers was applied to the piano trade and business in the Pacific northwest.

"IV.    That Oregon Eilers Music House is the successor in name of Graves Music House, and Graves Music Company is the successor in name of Graves & Co.; that Graves & Co. was a corporation with a capital stock in February, 1908, of $10,000, doing business in the City of Portland, County of Multnomah, State of Oregon.

"V.    That on the eighth day of February, 1908, or thereabouts Hy J. Eilers, A. H. Eilers, S. J. McCormick, being then the officers and directors in charge of and managing all of the business of Eilers Piano House, with the property and assets of Eilers Piano House, to wit, money and notes thereof, bought and purchased from F. W. Graves and E. R. Pittelkau all of the capital stock of Graves & Co., with the money and property of Eilers Piano House and for

the use and benefit thereof, and not otherwise, and upon said eighth day of February, 1908, or thereabouts, a meeting of Eilers Piano House directors and stockholders was had and held, wherein Hy J. Eilers, and his associates A. H. Eilers, S. J. McCormick and others, were authorized to hold in trust, and not otherwise, for the benefit of Eilers Piano House, all of the property, assets, and capital stock of Graves & Co., and in pursuance thereof Hy J. Eilers, A. H. Eilers and S. J. McCormick, as and for Eilers Piano House, were let into possession and became possessed of all the property and assets of Graves & Co.

"VI. That thereafter the name Graves & Co. was changed to Graves Music Company, the capital stock was increased, and thereafter the name of Graves Music Company was changed to Oregon Eilers Music House, the defendant herein, and the capital stock was increased to $200,000, but said increase did not represent any new assets or any new or additional money and none was contributed thereto, and said latter concern in that name and in that manner came into existence and is a constituent and subsidiary part of Eilers Music House, the bankrupt.

"VII. That Eilers Piano House after February 8, 1908, became and was Eilers Music House, and Eilers Music House, the bankrupt, succeeded to, was intended to be, and became the owner of all of the trade and assets of every kind and nature whatsoever of Eilers Piano House; that Eilers Music House, bankrupt, did business in the names of said companies herein mentioned, as well as in its own name, and used the names of itself and them and other companies in which to do its business, and all of the property and all of its assets were carried in, transferred to and with, and intermingled in and with all and every and each of said corporations, so that what was asserted to be or claimed as the assets and property of the aforesaid other corporations were all at the same time intermingled, confused, treated, and dealt with as assets of Eilers Music

House, bankrupt; that all of the officers of each and every of said corporations were themselves officers of Eilers Music House and the directors thereof, and all of the main management, direction, control, conduct, and operation was and always has been during all of the times in this complaint mentioned and for a long time consisting of many years continuously prior to February 15, 1918, by Hy J. Eilers, acting through and by S. J. McCormick, A. E. Barnickel, F. W. Graves, W. L. Cornell, and others in aid and assistance of them, as directors and officers of Eilers Music House and some time directors and officers of the other corporations in one form or another or in one office or another, and that for a period of 10 years or more prior to the fifteenth day of February, 1918, and continuously down to the bankruptcy, all of the business of all of said corporations was directed and managed, operated, controlled and conducted by and through one office and under one system; that Oregon Eilers Music House is merely another way and method, in fact and substance the bankrupt Eilers Music House under a different name, by which it did business through the direction and supervision and control of Hy J. Eilers.

"VIII.   That in his capacity as trustee in bankruptcy of Eilers Music House plaintiff owns and holds 457 shares of the par value of $100 a share, or the aggregate amount, at par, of $45,700 of the capital stock of Oregon Eilers Music House; that this stock interest came to and into existence in the following manner:

"That Eilers Music House, by and through the acts of its aforesaid officers, directors, and stockholders, and while said Eilers Music House was then insolvent, transferred, at the solicitation of the said officers, directors, and stockholders of Oregon Eilers Music House, pianos, instruments, and property theretofore in the possession of and belonging to Eilers Music House, of the alleged and ascertained value representing the amount of the book entry for

said aforesaid capital stock in the sum of $45,700 to and in said Oregon Eilers Music House.

"That of the remaining $200,000 of the alleged capital stock of Oregon Eilers Music House $150,-000 par value thereof is held and controlled by Hy J. Eilers and those acting in aid and assistance of him as aforesaid and is, or the larger part thereof is, if not all, in the hands of Miller Murdock and by him held under an agreement for the benefit of Hy J. Eilers to and until the eighteenth day of October, 1918, or thereabouts, and to be delivered to said Hy J. Eilers upon the payment of the sum of $80,900; that said Miller Murdock is the counselor, and has for a long time so been, of the defendant and of all the corporations allied and connected with it and of Eilers Music House, the bankrupt, and although said last-named time has expired, said stock yet remains as aforesaid.

"IX. That Oregon Eilers Music House has always been and is an offshoot and dependent subsidiary of Eilers Music House, operated, controlled, and conducted as aforesaid for the purpose of carrying out the transaction and bringing about the results herein complained of.

"X. That among the other corporations with which Oregon Eilers Music House is identified as part of the Eilers system are the following named:

"(a) Spokane Eilers Music House in the City of Spokane, in which Eilers Music House is entitled to a one-third (1/3) interest therein and the defendant to a two-thirds (2/3) interest therein.

"(b) Eilers Music Company of San Francisco is now in bankruptcy in the District Court of the United States in and for the Northern District of California, and there being administered as an adjudicated bankrupt in that jurisdiction, but wherein the accounts and transactions between Oregon Eilers Music House, in the name of Eilers Music House and in its own name, and the accounts of Eilers Music House, in the name of itself or any of its other subsidiary corporations, have not been, are not now, and never

have been reconciled or settled with the accounts of it, the said Eilers Music Company, bankrupt, at San Francisco, so that this plaintiff has not been able and cannot now properly state and establish in the bankruptcy court in California the exact nature and amount of claim that ought to be held and presented to that court, nor is it yet possible for this plaintiff to set forth and show, by reason of the matters and things herein alleged and because of the failure of those knowing the same to disclose fully all thereof, the amount of property or assets to which the plaintiff is entitled, but this plaintiff doth allege and say that such a claim exists in large amount, and because of the matters and things herein set forth plaintiff is unable to establish the same and may suffer the loss thereof. * *

"That all of the aforesaid corporations are a constituent part of the bankrupt Eilers Music House in one way or another and owe their existence in the manner of conducting their business and the method of the control thereof to the operations, conduct, control, and management of the property and assets of Eilers Music House, the bankrupt.

"XI.   That in the conduct of the trade and business of dealing in pianos, talking machines, and musical instruments during the times herein mentioned with and between all of said several aforesaid corporations, Eilers Music House, or aforetime Eilers Piano House, dealt with and obtained from manufacturers thereof instruments for sale in what was known as the 'northern field' so far as Eilers Piano House and Eilers Music House, were concerned with the defendant herein, and so far as the 'southern field' was concerned with Eilers Music Company of San Francisco, but within a period of six years before the adjudication of bankruptcy of Eilers Music House both the northern and southern fields of the Eilers system became financially involved and embarrassed and on the verge of insolvency, and it was conceived and planned by Hy J. Eilers and his associates and those acting in aid and assistance of

him to keep up and maintain, as if a separate and distinct corporation, Oregon Eilers Music House, at the expense and cost of dissipation and waste of the property and assets of Eilers Music House, and in pursuance of that plan, design, purpose, and intent, Oregon Eilers Music House was so run and has been so run and managed since it came into existence as to take unto itself property and assets of Eilers Music House as if they were its own and deal with them in regard thereto so that the entire intermingling and confusion of assets is so complete and involved that, unless Oregon Eilers Music House and those acting in control and management of it are made to disclose fully and account by a court of competent jurisdiction fully, all of the transactions thereabout had, the estate of Eilers Music House in charge of this plaintiff as trustee in bankruptcy will suffer irremediable and irreparable loss and injury and this trustee be put to large and unnecessary expense of a multiplicity of suits and actions to establish and determine the amounts of notes, evidences of indebtedness, and obligations that Oregon Eilers Music House has taken and appropriated unto itself of the estate and property of Eilers Music House and of the large amount of property consisting of pianos, musical instruments, talking machines, and the like which have been taken and sold by Oregon Eilers Music House as if its own and as a part of the system wherein and whereby the uncertainty of the estate of Eilers Music House bankrupt and the establishment of its rights without complete and adequate relief and speedy determination which can be had in this cause cannot be otherwise determined or ascertained in any court nor by an action at law, and that without an accounting to that end no speedy, adequate, complete, or proper relief can be had by this plaintiff in respect of said transactions or any of them, either before or since the bankruptcy, and that the defendant now continues to do and transact business and to control property and assets in the same manner, with property and assets of the bank-

rupt, as has been heretofore done in defiance of the rights of this plaintiff and against the orders in that behalf made in the bankruptcy.

"XII.   That in transactions had by the Oregon Eilers Music House in the month of February, 1918, bankable paper and funds of Eilers Music House, the bankrupt, were taken and converted by the defendant and its officers and agents and delivered over and in sundry and various amounts under schedules purporting to be of date the eleventh day of February, 1918, to Gerd Eilers, Jr., the brother of Hy J. Eilers, to Gerd Eilers, the father of Hy J. Eilers, to Anna Eilers and Charles Eilers and to Helen Eilers, sisters and brother of said Hy J. Eilers, and to Elise Meiners, an aunt of Hy J. Eilers, and in several thousand dollars to each of them and to others and various sundry persons, which bankable paper and funds consisted of contracts for various instruments and stock in trade in the name of Eilers Talking Machine Company, Eilers Music House, and various other corporations identified with and interrelated in their business transactions with the bankrupt, and all within four months of the adjudication of bankruptcy herein, and the bankruptcy court has by order directed the surrender of said paper, but its said order has not been complied with.

"XIII.   That additional to the foregoing transactions and since the bankruptcy there have been created by the defendant in favor of relatives of Hy J. Eilers and in favor of employees of Eilers Music House theretofore, but now alleged employees of the defendant, pretended obligations in large amounts of money, viz.: To Mrs. Elise Meiners, the aunt of Hy J. Eilers, to Miss Mary Thaw, the private secretary of Hy J. Eilers, likewise pretended demand notes in large sums of money, and to other relatives assignments of piano paper and obligations as aforesaid, all pretending to be and to be held as bills payable of the defendant, but which this plaintiff alleges are in pursuance of the plan, design, and scheme to obtain property and assets of Oregon Eilers Music

House to create fictitious demands against the same for the general purpose of obtaining the whole of said business and to hinder, delay and to defraud creditors thereof and of Eilers Music House, the bankrupt; and that during the same period and as part of similar transactions Oregon Eilers Music House, the defendant, by the interchange of accommodation paper and obligations of like character, is involving itself in its course of business as conducted with Eilers Music House of San Francisco in large and various amounts, so that the present bills payable account, so far as this plaintiff has been permitted to ascertain, consists of upwards, due with current bills, of approximately $45,000 or thereabouts, and that, whether said claims are true or false, the fact is that all of the property possessed by Oregon Eilers Music House taken now at fair valuation would not be more than sufficient to pay all of its debts, and if the present management was allowed to continue with its policies and methods nothing whatever would be left to the stockholders, for this plaintiff, and for said Eilers Music House, but the whole estate and property would be dissipated, wasted and destroyed, and is now in imminent danger of waste, dissipation and destruction if remedy and relief be not had as in this court herein prayed.

"XIV. That Eilers Music House, bankrupt, is the equitable owner of all of the property and assets held, possessed, and controlled by Oregon Eilers Music House, the defendant, and of every part thereof.

"XV. That in the conduct of the piano and instrument business as hereinbefore mentioned, and since Oregon Eilers Music House, the defendant, through Hy J. Eilers and those acting in aid and assistance of him, as agents and officers, have been conducting the business, the condition of banking caused by the present war and the regulations of the Federal Reserve Board upon the subject of discounts affecting piano paper and paper giving rise to funds in that business limits the extension of credit, and no credit thereon can now be obtained because, in ac-

cordance with the rules of the Federal Reserve Board, that character of paper is not rediscountable, and, besides this, manufacturers of musical instruments, pianos, and the like, upon which the continuance of business depends, will not extend credit as theretofore done, and they will not furnish their instruments without cash payment, and banks will not now loan and rediscount as commercial paper the obligation theretofore used as collateral or for rediscount, nor will banks advance money for working capital because of said conditions, and so the defendant is left without and is without working capital and that such working capital, as might have existed at this date has been used, dissipated, and impaired, besides which commercial houses and banks formerly accustomed to handle piano and instrument paper of the kind used by discount purchase thereof have ceased to take and purchase paper from the Eilers houses on account of the insolvent condition of Eilers Music House and its subsidiary corporations, and so it is that at this time credit cannot now be obtained to afford money for use in the business of the defendant.

"XVI. That in the course of business as conducted and as affecting the interests of this plaintiff and of Eilers Music House, bankrupt, defendant carries and conducts among its transactions and accounts in its course of business an account denominated 'GOODS SOLD NOT OURS,' in which is included property and assets belonging to Eilers Music House, bankrupt, and its other subsidiaries, and these have been disposed of and the proceeds thereof taken and converted by defendant, so that without accounting for the true and actual sales value of the property so taken, realized by Oregon Eilers Music House, property and assets belonging to this plaintiff and to Eilers Music House, bankrupt, to the amount of many thousands of dollars have been taken and sold, and property and assets which ought to have been and were the property of this trustee, plaintiff herein, have been sold and the proceeds ap-

propriated and converted to the use of the defendant without accounting therefor, and that, so far as plaintiff can now state, the facts and information thereof being within the possession of the defendant, and not of this plaintiff, the amount thereof at acquisition value only is in excess of $2,000 and perhaps more.

"XVII. That in the course of the transactions of the business of Oregon Eilers Music House since the bankruptcy of Eilers Music House, there have been suffered and permitted and allowed to be levied and remain undischarged, undefended, and unsatisfied attachment suits in this court in the name of the Northern Trust Company, Anna K. Smith, and C. K. Smith as plaintiffs against the defendant in the sum of approximately $1,500, and also another in behalf of the First National Bank of Kingsburg as plaintiff against the defendant in the sum of approximately $5,000, and further suits and attachments are threatened.

"XVIII. That in the course of the transaction of said business for a similar period, the lease under which Oregon Eilers Music House was occupying the property and premises formerly occupied by Eilers Music House became the subject of litigation in this court at the instance of the lessors, Maegly & Tichnor, and such proceedings had that a verdict was given and a judgment thereon rendered against this defendant and in favor of said lessors requiring the surrender of said premises and the termination of said lease, and that in the piano business a permanent abode and location, and particularly in the Eilers business required, was thus destroyed, and the officers and agents of Oregon Eilers Music House, separately and distinct from Eilers Music House and as an independent institution, have claimed the right to enter into and engage and have entered into and engaged upon a new lease at a new location at new rates of rent, thereby incurring new and additional obligations to the further liability of said defendant and without the consent and against the interests

of this plaintiff as trustee of Eilers Music House, bankrupt, and as a stockholder, that as a result the premises aforetime occupied have passed to Bush & Lane Piano Company, competitors in the piano trade and business.

"XIX. That the transfer of assets, to wit, piano instrument contracts and paper, to relatives and favored employees in numerous and very large amounts, have been permitted and are being done and transacted now and ever since the fall of 1918, so that much of the current prime paper representing transactions has been handed over to said relatives and favored employees in such way and manner as to subject the defendant to large sacrifices and loss and to the prejudice of its business and the maintenance of its credit.

"XX. That in the course of business as conducted and as affecting the interest of this plaintiff and of Eilers Music House, bankrupt, the defendant disposes of piano and instrument stock at low figures to get money for its business operation, and in return therefor pays high rental value for such piano and instrument stock so disposed of by way of avoiding usury laws while the money so obtained is being used by it, the said pretended rental being in lieu of interest; then it rebuys or makes repurchases of said pianos when needed for delivery to customers when it does make straight customer sales; that in so doing defendant gradually depletes all piano and instrument stock howsoever obtained and possessed by defendant, and piles up against itself large and unnecessary expense and loss, to the detriment of plaintiff's interest and the interest of the bankrupt Eilers Music House.

"XXI. That the management, direction, control, and supervision of Eilers Music House by Hy J. Eilers and agents and officers thereof acting in aid and assistance of him and at his direction brought Eilers Music House into bankrupt condition and all of its subsidiaries and auxiliary corporations to physical impairment and financial disaster, and the

management and control of Oregon Eilers Music House as it is now being conducted and has been conducted in the same way and manner as Eilers Music House is under and by the management, direction, control, and supervision of Hy J. Eilers, and if allowed to continue, will accomplish the impairment and dissipation of its assets and result in financial disaster thereto.

"XXII. That large and various sums of money are due or about to become due or claimed to be due from Oregon Eilers Music House and various persons, upwards of $40,000 or thereabouts, beside current bills, and, so far as this plaintiff now knows or is advised there is not sufficient money to meet the same, that the estate of Eilers Music House will suffer damage, loss, and irreparable injury and such damage, loss and irreparable injury will occur if Oregon Eilers Music House in its present relations with Eilers Music House and the property and assets thereof are permitted to be and remain and continue to do business in the way and manner the same is being done and conducted, and that said Oregon Eilers Music House is in imminent danger of insolvency unless this court protects the property thereof and conserves and protects the interests of the stockholders and creditors therein.

"XXIII. Moreover, the property and assets of Oregon Eilers Music House and apparently in the possession of the defendant are virtually and actually and in fact and substance, although in a different name, the property and assets of Eilers Music House, the bankrupt, although in the apparent possession of the defendant, and the property thus held and controlled is in danger of being lost and materially injured and impaired and has been impaired and is being impaired, injured, and lost, so that the creditors of Eilers Music House are being deprived of their just proportion of its assets, and so that the stockholders and creditors of Oregon Eilers Music House are about to be deprived of their just propor-

tion of what ought to be paid toward the debts and liabilities of either of said corporations.

"XXIV. That this plaintiff has applied to the Bankruptcy Court before its referee sitting for the necessary orders to obtain relief; the orders were granted, but the same have up to this time been disobeyed and not complied with; that said orders are many and various and were given sometimes by the referee upon the hearing in bankruptcy, sometimes by one of the district judges, but in no instance have said orders been fully complied with nor the books, papers, assets, and property therein required to be produced given over to the custody of this plaintiff or to the referee of said court in bankruptcy, and so this plenary suit is brought for the purposes of arresting and terminating the manner and methods engaged upon by the officers and agents of Oregon Eilers Music House in obstructing the administration of the estate in bankruptcy of Eilers Music House and its subsidiary, auxiliary and allied corporations as part of one system, and this plaintiff alleges that without relief proper to be granted herein, if the officers and agents of Oregon Eilers Music House and the defendant are allowed to continue in the way and manner they have been doing, there is no way that speedy, adequate, complete, and proper relief can be had than by this court appointing a receiver to take charge of said business in the interest of all persons concerned, and that pending the adjudication and determination of the matters and things herein complained of to prevent waste, impairment, dissipation, and loss, a receiver of this court should be immediately appointed and put in possession."

Defendant moved: (1) To strike this complaint from the files as sham and frivolous; and (2) to strike out paragraphs IX to XXIII, inclusive, for the reason that they stated mere conclusions of law, and not facts. These motions were overruled, and on hearing before the presiding judge the defendant in-

terposed a demurrer upon three grounds: (1) defect of parties defendant; (2) that several causes of suit had been improperly united; and (3) that the complaint did not state facts sufficient to constitute a cause of suit against defendant. The demurrer being overruled upon a hearing thereof before the presiding judge, defendant answered, putting in issue all the allegations of the complaint material to be considered here, and the suit came on for trial before Hon. C. U. GANTENBEIN, whose department was a different one from that of the presiding judge, Hon. G. W. STAPLETON, before whom the various motions and the demurrer had been argued previously.

After the plaintiff had been examined and before the conclusion of the testimony on behalf of plaintiff, defendant's counsel moved the court for a dismissal of the case on the ground that the complaint did not state 'facts sufficient to constitute a cause of suit, and that the court was without jurisdiction to appoint a receiver, which motion was sustained, and a decree entered accordingly, from which decree plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellant there was a brief over the names of *Mr. William C. Bristol* and *Mr. F. E. Grigsby,* with an oral argument by *Mr. Bristol.*

For respondent there was a brief over the names of *Mr. Miller Murdoch* and *Mr. Ralph R. Duniway,* with an oral argument by *Mr. Murdoch.*

McBRIDE, J.—Much of plaintiff's brief is taken up with an argument attempting to show that the judge who tried this case had no right to pass upon

the sufficiency of the complaint after the presiding judge had overruled a demurrer based upon the ground of insufficiency; and the confusion which might arise from the action of the judge of one department in overruling the decision of another department upon the same question and in the same case is particularly emphasized. Whether such a course is precluded as a matter of law or is merely a rule of comity between judges of different departments of the same court is a debatable question, but one which we are not here called upon to decide.

If the complaint does not state facts sufficient to constitute a cause of suit, this court upon appeal will not send the case back to be tried because the judge in the court below acted irregularly in so holding, in opposition to a previous holding to the contrary by the presiding judge who passed upon the demurrer. And, on the contrary, if the judge of the department before whom the case was heard erred in granting a nonsuit upon the ground that the complaint does not state facts sufficient to constitute a cause of suit against the defendant, this court will send the case back for trial.

1. The complaint, the substance of which we have given, is somewhat discursive, containing many unnecessary allegations, and comes dangerously close to being a mere "fishing bill," which courts will usually dismiss; but, taken as a whole, we think it appears therefrom that defendant is and has always been a mere dummy or substitute corporation and nothing more than an agent of the bankrupt; that its property and assets are and always have been legally, or at least equitably, the property of the bankrupt, and that such property is in danger of being dissipated and fraudulently made away with,

to the injury and depletion of the bankrupt's estate
and to the detriment of its creditors. If these facts
can be clearly made to appear, and the evidence in
that respect ought to be convincing and satisfactory,
the court has the power and it is its duty to appoint
a receiver and require a marshaling of such assets,
to the same extent that it might do upon a creditor's
bill had not bankruptcy intervened. We base the
right of the trustee in bankruptcy to bring such suit
upon subdivision "e" of Section 70, Bankruptcy Act
of 1898, which is as follows:

"The trustee may avoid any transfer by the bank-
rupt of his property which any creditor of such
bankrupt might have avoided and may recover the
property so transferred, or its value, from the person
to whom it was transferred, unless he was a *bona
fide* holder for value prior to the date of the adjudi-
cation. Such property may be recovered or its value
collected from whoever may have received it, except
a *bona fide* holder for value. For the purpose of
such recovery any court of bankruptcy as herein-
before defined, and any state court which would have
had jurisdiction if bankruptcy had not intervened,
shall have concurrent jurisdiction": U. S. Comp.
Stats., § 9654; 1 Fed. Stats. Ann. (2 ed.), p. 1150.

2. Taking the complaint by its four corners and
rejecting many needless allegations, we find that it
in effect alleges that the defendant corporation is in
fact a mere agent of the bankrupt, having no assets
of its own, but doing business upon the assets of
the bankrupt and as a trustee of the bankrupt, that
its pretended assets are in fact the assets of Eilers
Music House, and that it is fraudulently disposing
of and scattering them in such a way that they will
be lost to the bankrupt estate. It is true that the
term "fraud" or "fraudulently" is not used in the
complaint, but it is not necessary that it should be,

where the facts set forth show acts which are necessarily fraudulent. It may well be that the testimony of plaintiff's first witness was not such as to indicate that plaintiff had a very strong case. However, we are not dealing with the testimony, but with the ruling of the court on the pleadings. The testimony was not completed, and we will not consider for any purpose that which had been received when the court declined to hear plaintiff further.

3. The fact that some proceeding had been attempted in the United States District Court to get an accounting as to these alleged assets is of no moment in this case. Whatever that proceeding was, it does not appear to have been a suit to marshal assets, and there is no plea here that there was a suit or any other proceeding against this defendant pending when the present suit was instituted. The action of the court below appears to have been based largely upon an unfortunate remark of counsel for plaintiff, who in response to a question by the court said, "This is a suit to have a receiver appointed." While this statement was partly true, it is evident from an inspection of the complaint and the relief therein prayed for that it was not the only object of the proceeding. It is evident that the intent of the suit was to uncover and compel defendant to disclose alleged assets of the bankrupt, and, when so disclosed, to place them in the hands of a receiver so that they might not be dissipated or misapplied.

4. While the complaint does not disclose a case which would have justified a court in appointing a receiver *pendente lite,* we are of the opinion that it does state facts sufficient to enable plaintiff to invoke the aid of a court of equity in order to discover and marshal concealed assets of the bankrupt, and that

the Circuit Court was in error in dismissing the suit. The decree will be reversed, and the cause remanded with directions to proceed with the hearing.

REVERSED AND REMANDED WITH DIRECTIONS.

BURNETT, C. J., and BENSON and HARRIS, JJ., concur.