### In re EILERS MUSIC HOUSE (two cases).

### OREGON EILERS MUSIC HOUSE v. SITTON (two cases).

(Circuit Court of Appeals, Ninth Circuit.  June 6, 1921.)

#### Nos. 3529, 3548.

1. **Bankruptcy** ⊂⟁287(1)—**Form of pleading in proceeding by trustee is immaterial.**

Where a court of bankruptcy has jurisdiction of a plenary suit by a trustee, the fact that he proceeds by petition as for a summary order is immaterial, if the parties appear and there is a full hearing on the merits, and in such case the proceeding will be treated as a plenary suit.

⊂⟁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Abatement and revival ⬤⟶17—Pendency of another suit as bar must be pleaded.**

In a proceeding in a court of bankruptcy by a trustee against a third party to recover assets, the jurisdiction of the court is not affected by the fact that another action between the same parties involving the same issues, is pending in a state court, where such objection is not pleaded and there is no conflict between the courts over the possession of specific property.

Ross, Circuit Judge, dissenting.

Petition to Superintend and Revise Decree in Bankruptcy of, and Appeal from, the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

On rehearing. Affirmed.

For prior opinion, see 270 Fed. 915.

Thomas Mannix, of Portland, Or., for petitioner and appellant.

W. C. Bristol, of Portland, Or., for respondent and appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. Rehearing was ordered in these cases on the representation of the appellant that a valid defense to the suits existed in the fact that, before the institution of these proceedings in the court of bankruptcy which were reviewed in this court on appeal, a plenary suit between the same parties and involving the same subject-matter was begun by the trustee in bankruptcy in a state court of the state of Oregon, which action was still pending.

The facts disclosed by the record are that on August 21, 1918, the trustee petitioned the court of bankruptcy for instructions, stating that he was in doubt whether he should proceed in the state court in a plenary suit against Oregon Eilers Music House asking for a receivership for the purpose of placing its alleged independent assets more completely under control, and asking the advice of the court. On August 23, 1918, the court authorized the trustee to proceed in any court of competent jurisdiction in the state of Oregon or elsewhere, by any such actions or suits as may be necessary for the purpose of reducing to possession and maintaining the control of all property and assets of the bankrupt's estate, and expressly authorized the trustee to bring any such action or suit against Oregon Eilers Music House or any of the individuals or officers controlling the same.

On March 15, 1919, in pursuance of that order, the trustee commenced in a state court of Oregon a plenary suit against Oregon Eilers Music House, wherein he set forth the facts and prayed for the appointment of a receiver to take possession of the assets of the defendant, and for a decree that all the property in the possession of the defendant and its officers be adjudicated to be the property of the bankrupt. The defendant in that action denied the jurisdiction of the state court and urgently insisted that the jurisdiction was solely in the court of bankruptcy. But, its demurrer having been overruled, it filed its answer on March 26, 1919, and joined issues on the averments of the complaint. Trial was commenced on May 6, 1919, but, after the

testimony of the trustee was received, the court, taking the view that the suit was brought simply for the purpose of obtaining the appointment of a receiver, held that the complaint did not set out sufficient facts to justify such appointment, and dismissed the cause. Thereafter the trustee appealed to the Supreme Court of the state of Oregon, but it was not until February 15, 1921, that decision was reached on the appeal. The court reversed the ruling of the trial court, and held that the complaint of the trustee stated a case for discovery and marshaling of assets of the bankrupt, on the theory that the defendant was a mere agent of the bankrupt, having no assets of its own, but doing business on the bankrupt's assets, which it was fraudulently disposing of in such a way as to result in loss to the bankrupt's estate, 195 Pac. 563. That decision was made one day after the decision of this court on the appeal. Nothing further has been done in that case.

In the meantime, on April 30, 1919, the trustee filed in the bankruptcy court a petition setting forth the facts as the trustee conceived them to be, and praying for an order upon Oregon Eilers Music House and its officers and agents, to show cause why the prayer of the petition should not be allowed, and praying for a complete and full hearing and determination of the rights of the defendants in and to the property described in the petition, and that the said property be brought into the control of the court, and for such further relief as the trustee might be entitled to upon the facts and the rules of equity. On May 1, 1919, an order was issued to show cause as prayed for, and it was duly served. On May 19, 1919, the Oregon Eilers Music House answered the petition and the order to show cause, setting up its denials of matters alleged in the petition, and alleging affirmative matter in support of its claim of right to retain the property involved. But the first portion of the answer alleged that the petition failed to state facts sufficient to constitute a cause of suit of any kind against the corporation, and that the court had no jurisdiction to entertain said petition, or to hear or determine any issue of fact or law between that corporation and the bankrupt, and that the petition should be dismissed because of the allegations which it contained.

Issue having been joined, the District Court, on June 21, 1919, made an order referring said cause to a special master in chancery, with instructions to act in conformity with the rules in equity and the practice of the court, and examine into, hear, and determine whether Oregon Eilers Music House is a part of Eilers Music House, bankrupt. as alleged by the trustee, and whether the property at the time when Eilers Music House was declared bankrupt, claimed by the Oregon Eilers Music House, belonged to the bankrupt at the time when the petition in bankruptcy was filed, or to Oregon Eilers Music House, and the special master was directed to take testimony and evidence, documentary and oral, "so that the whole matter can be heard upon the averments of the petition and the denial and affirmative matter set up in the answer." In pursuance of that order, the parties by their attorneys appeared before the special master, and exhaustive examination was made of the facts, voluminous testimony was taken for and on behalf of the respective parties and reduced to writing by the special master, the

hearings being had at numerous sessions, covering a period of about two months. The special master made an exhaustive and voluminous report to the District Court, and thereupon the appellant filed numerous exceptions to the report of the special master, and presented and argued the same to the court below. All the exceptions were overruled, and the judgment was entered which was reviewed by this court on the appeal; the appellant presenting in this court all the questions which it raised before the court below.

The objection that the matters in issue which were presented by the petition and the answer thereto could not be determined by a plenary suit in that court was never presented to the court below. The answer, it is true, alleged that the court had no jurisdiction to entertain said petition or to make said orders, or hear or determine any issue of fact or law between the parties. But this was an objection to the jurisdiction of that court to deal in a summary manner with the matters presented for determination, and the further answer of the appellant, in which it pleaded its attitude toward the suit which was brought in the state court, as hereinafter referred to, alleging that, if the allegations of the trustee in bankruptcy were true, he ought to have proceeded in the bankruptcy court, can only be taken as expressing its assent to the jurisdiction of the bankruptcy court in a plenary suit between the parties. That the court had jurisdiction to deal with and determine those matters in a plenary suit between the parties, with or without the defendant's consent, is shown by section 70, subdivision "e" of the Bankruptcy Act (Comp. St. § 9654). Collett v. Adams, 249 U. S. 545, 39 Sup. Ct. 372, 63 L. Ed. 764.

[1] The proceeding in the District Court, although it was denominated a summary proceeding, was in fact a plenary suit.

"The form of pleading is immaterial, where the court has jurisdiction to proceed by way of plenary suit, and no seasonable objection is taken to the form of procedure, and where under the form of procedure adopted, the rights of the respondent are substantially as in a plenary suit." Loveland on Bankruptcy (4th Ed.) 1051.

In Milner v. Meek, 95 U. S. 252, 257 (24 L. Ed. 444), Chief Justice Waite said:

"The pleading filed by the assignee was appropriate in form for a petition in the bankruptcy suit, but it was equally good in substance as a bill in equity. It contained a complete statement of a cause of action cognizable in equity and a sufficient prayer for relief. There was no formal prayer for a subpœna, but process was issued and served. All the parties interested appeared, and presented their respective claims by answers, or answers and cross-petitions, with appropriate prayers for relief."

The doctrine of that decision was followed and applied by Judge Lowell in In re Steuer (D. C.) 104 Fed. 976, and by the Circuit Court of Appeals for the Fourth Circuit in Jones v. Blair, 242 Fed. 783, 155 C. C. A. 371.

It is clear, therefore, that the appellant has had its day in court. The petition contained all the essential averments of a bill in equity. The answer set forth all the defenses which could have been alleged in an answer in equity. The defendant had ample opportunity to pre-

sent its contentions and all its evidence to sustain them. It availed itself of that opportunity. The merits of the controversy were determined in a court and in a plenary proceeding, in which all the substantial rights of the appellant were safeguarded, and it has had its remedy of appeal to this court upon the merits of the controversy.

[2] In the pleadings and proceedings in the court below the only reference to a prior proceeding in the state court is the allegation of the petition that proceedings had been taken and were pending under the General Laws of Oregon of 1915, page 127, in the circuit court of the state of Oregon, for the appointment of a receiver of Oregon Eilers Music House, and that when called for trial that corporation objected that the trustee ought to have proceeded in the bankruptcy court for the relief there sought, and the answer to the petition admitting that "some sort of a suit" was filed in the state court, and that when it was called for trial the defendant therein "made among other objections that, if the allegations of the trustee in bankruptcy were true, he ought to have proceeded in the bankruptcy court." The fact that a prior suit between the same parties for the same cause of action was pending in the state court was not pleaded as a defense to the proceedings in the bankruptcy court. The appellant presents it for the first time in its petition for rehearing in this court. There was no appointment of a receiver in the state court and none of the property involved in the litigation was taken into the possession of that court. It is the general rule that the pendency of a prior suit in a state court is not a bar to a suit in the Circuit Court of the United States by the same plaintiff against the same defendant for the same cause of action. Stanton v. Embry, 93 U. S. 548, 23 L. Ed. 983.

In Barber Asphalt Pav. Co. v. Morris, 132 Fed. 945, 66 C. C. A. 55, 67 L. R. A. 761, where numerous authorities were cited, it was held that the pendency in a state court of a prior action between the same parties for the same cause furnishes no ground for an abatement or for a stay of proceedings in a subsequent action brought by the same plaintiff in a federal court, where no conflict arises between the courts over the custody or dominion of specific property.

In McClellan v. Carland, 217 U. S. 268, 282, 30 Sup. Ct. 501, 505 (54 L. Ed. 762), the court said:

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction, for both the state and federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case."

Exceptions to that rule are recognized in cases where the possession of the res vests in the court which has first acquired jurisdiction, and also in cases where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. Farmers' Loan, etc., Co. v. Lake St. Rd. Co., 177 U. S. 51,

20 Sup. Ct. 564, 44 L. Ed. 667; Wolf v. District Court, 235 Fed. 69, 148 C. C. A. 563; In re Lasserot, 240 Fed. 325, 153 C. C. A. 251.

But we need not pause to inquire whether the pendency of the suit in the state court might have been shown in abatement of the proceeding in the bankruptcy court. The controlling fact is that the pendency of the former suit was not presented by plea or answer in the federal court, nor was objection at any time made in that court that a prior suit in a state court involved the same matters in controversy. Such an objection must be pleaded, "otherwise it will be considered waived" (1 R. C. L. 19; 1 C. J. 101); and the objection must be made in limine, and it is waived by pleading to the merits (Stephens v. Monongahela Bank, 111 U. S. 197, 4 Sup. Ct. 336, 28 L. Ed. 399; Marshall v. Otto [C. C.] 59 Fed. 249; Pierce v. Feagans [C. C.] 39 Fed. 587; City of North Muskegon v. Clark, 62 Fed. 694, 10 C. C. A. 591; In re Buchans Soap Corporation [D. C.] 169 Fed. 1017. In the case last cited, the court said:

"If the case is pending in the same court, the defense of a former action pending must be duly pleaded in the second action. The defendant in such second action cannot let the case go to judgment, and then, if the judgment does not suit him, claim that the pendency of the former action is a bar."

The decree is affirmed.

ROSS, Circuit Judge (dissenting). I respectfully dissent from the judgment of affirmance in these cases, as I did when they were last here (270 Fed. 915, 925), and for the same reasons as were then briefly stated in my dissenting opinion, and which views, in my judgment, find full support in the following decisions of other Circuit Courts of Appeals and of the Supreme Court not then cited: In re Yorkville Coal Co., 211 Fed. 619, 128 C. C. A. 570 (Second Circuit); In re Blum, 202 Fed. 883, 121 C. C. A. 241 (Seventh Circuit); In re Midtown Contracting Co., 243 Fed. 56, 155 C. C. A. 586 (Second Circuit); In re Goldstein, 216 Fed. 887, 133 C. C. A. 91 (Seventh Circuit); Babbit v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969.

The records in the present cases show beyond question that the proceedings in the court below were summary proceedings in bankruptcy, and were so treated and declared both by the court and by the special master, who conducted them by appointment of the court. This I think is very clearly shown by this extract from the opinion of the court confirming the order of the master:

"Upon the issues thus joined the case was referred to the special master, who, after exhaustive and elaborate hearings, filed a report, in which he detailed the facts as he understands them and reaches the conclusion that the assets of the Oregon Eilers were in truth and in fact a part of the assets of the bankrupt's estate, and recommends that an order be entered requiring that they be turned over to the trustee. I have read this testimony time and again, I have examined it in the light of the arguments and briefs, and I am forced to concur in the views of the special master, although I do not agree with some of his findings of fact. He finds that as a matter of fact, at the time the stock of Graves & Co. was purchased, it was understood it should be done for the use and benefit of the individual stockholders of the Piano House; but I am of the opinion that this was a conclusion not warranted by the testimony. The records of the corporation and the entire transaction

are against any such conclusion. The contract entered into for the sale of the stock was made in the name of the Piano House and for its benefit. It was done in pursuance of resolution of the Piano House and was paid for by the Piano House.

"It is true that charges were made on the books against the account of individual stockholders for a part, if not all, the moneys used in paying the notes of the Piano House; but I am not able to determine whether that was merely a bookkeeping transaction or for some other purpose. The status of the accounts of these respective stockholders does not appear very clear from the testimony. It is in evidence, I believe, that at the time those charges were made there stood upon the books to the account of these gentlemen individually a credit sufficient to cover these charges; but whether there were any other obligations is not so clearly disclosed. In January, 1914, an audit of the books seems to have been made, at which time it was reported that there were stockholders' bills receivable outstanding amounting to $202,000. Whether any of this was outstanding at the time this transfer was made is not apparent. At the time of the bankruptcy, an expert examination of the books disclosed that there was about $400,000 due the corporation from these several stockholders; but I do not take this to be very material.

"The stock was purchased and paid for by the Piano House, it became the property of the Piano House, and the Piano House, as far as the record discloses, never has parted with that stock, and when it transferred its business and assets to the bankrupt, it naturally transferred this stock and the interest therein, together with the other assets. So that on the whole I am of the opinion that the report of the special master must be confirmed, and an order of that kind will be entered."

Nevertheless the present prevailing opinion treats the proceedings as a plenary suit, notwithstanding it expressly states that the trustee of the bankrupt had, long before instituting the summary proceedings, to wit, on August 21, 1918, petitioned the court of bankruptcy for instructions, on the ground that he was in doubt whether he should proceed in a court of the state in a plenary suit against Oregon Eilers Music House for the possession of the property in question, and for the appointment of a receiver thereof meanwhile, or take summary proceedings, and that, receiving from the bankruptcy court authority to commence such plenary suit, he did, on the 15th day of March, 1919, commence in a state court of Oregon an independent suit against Oregon Eilers Music House, wherein he set forth facts and prayed for the appointment of a receiver to take possession of the assets of that company, and for a decree that all the property there alleged to be in its possession be adjudicated to be the property of the bankrupt. A demurrer to that bill having been sustained by the court in which it was brought, the case was taken to the Supreme Court of Oregon, where on February 15, 1921 (195 Pac. 563), the judgment of the trial court of the state was reversed upon the ground that the complaint of the trustee in bankruptcy stated a case for the discovery and marshalling of the assets of the bankrupt.

In the present prevailing opinion of this court it is said that "nothing further has been done in that case." But suppose the state court, in protection of the actual possession of one of the corporations of the state, under bona fide claim of ownership, should proceed with the case and give judgment favorable to the Eilers Music House—what then? Since that suit antedated the summary proceedings here in question,

I am unable to see how such summary proceedings could operate as a bar thereto. On the contrary, I am of the opinion that the pendency of that plenary suit emphasizes the correctness of my conclusion that the bankruptcy court was without any jurisdiction summarily to take the property in controversy from the actual possession of the party claiming in good faith to own it.